Arnold **MARSHEL**, Plaintiff,

v.

**AFW FABRIC CORP.** et al., Defendants.

Guy **MICHAELS**, Plaintiff,

v.

Alvin **WEINSTEIN** et al., Defendants.

Jesse **KRAUSE**, Plaintiff,

v.

**CONCORD FABRICS, INC.**, et al., Defendants.

Barry L. **SWIFT**, Plaintiff,

v.

**CONCORD FABRICS, INC.**, Defendants.

Nos. 75 Civ. 1018–LFM, 75 Civ. 1027–LFM, 75 Civ. 1064–LFM and 75 Civ. 1465–LFM.

United States District Court, S. D. New York.

June 24, 1975.

Rubin, Baum, Levin, Constant & Friedman, New York City, for plaintiff in No. 75 Civ. 1018.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff in No. 75 Civ. 1027.

Kass, Goodkind, Wechsler & Gersten, New York City, for plaintiff in No. 75 Civ. 1064.

Lipper, Lowey & Dannenberg and Burton L. Knapp, New York City, for plaintiff in No. 75 Civ. 1465.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants.

## OPINION

MacMAHON, District Judge.

Plaintiffs in these four related actions move, pursuant to Rule 65, Fed.R.Civ.P., to enjoin preliminarily the proposed merger between Concord Fabrics, Inc. (Concord) and AFW Fabric Corp. (AFW). Plaintiff Michaels also seeks leave to file an amended complaint. Defendants move for an order consolidating the four actions for all purposes, appointing a general or liaison counsel for plaintiffs, and staying Concord Shareholders from commencing any additional actions based on the proposed merger.

These class and derivative actions arise out of the proposed merger of defendants Concord and AFW. Concord, a converter of fabrics, was, until July 1968, a private corporation owned by defendants Alvin and Frank Weinstein and their families. At that time, 300,000 shares of Concord stock were sold pub-

licly for $15 per share, and in June 1969 the Weinsteins sold 200,000 shares for $20 per share, also pursuant to a public offering. Since then, Concord stock has been listed on the American Stock Exchange.

Concord's earnings in 1968 and 1969 were over $2,000,000 per year, a record level, but its earnings declined sharply in the following two years and have been only moderate ever since. Concord paid dividends from 1968 through the first quarter of 1970. Since then, no dividends have been paid.

Concord stock was selling at a high of $25 per share in early 1969 but has steadily declined until it dropped to a low of about $1 per share in late 1974. This decline is attributable to a discontinuance of the company's dividends, declining earnings and general stock market decline. Through March of this year, the price of Concord stock never rose to $3 per share.

In January of this year, the Weinsteins initiated a plan to return Concord to the private ownership of the Weinstein family. As the first step toward this objective, the Weinsteins organized AFW, and, on February 5, 1975, they transferred 1,226,549 Concord shares, representing 68% of the total outstanding stock to AFW. In exchange for the Concord shares, the Weinsteins received 100% of AFW's stock.

On February 6, 1975, AFW made a tender offer of $3 per share for the publicly-held Concord stock. The Weinsteins planned to follow this tender offer with the merger of AFW into Concord in April 1975. All shareholders remaining at the time of the merger were to receive $3 per share for their Concord shares. The net result of the tender offer and merger would be to return Concord to the private ownership of the Weinstein family.

Concord's board of directors arrived at the $3 per share valuation of Concord's stock following an opinion by the investment banking and brokerage firm of Shearson Hayden Stone, Inc. (Shearson). Shearson advised Concord that $3 was the fair and equitable value of a Concord share.

On February 28, 1975, the first of these related shareholder actions [1] was filed. Plaintiff, in that purported class and derivative action, charges, in essence, that defendants engaged in a scheme and conspiracy to defraud Concord stockholders into selling their shares at an unfair price, in violation of Sections 10(b), 13(d), 14(a), 14(d) and 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78m(d), 78n(a), 78n(d) and 78n(e), various SEC rules and regulations and New York common law. It is alleged that the offering statement issued in connection with the tender offer contained misleading statements and omitted material facts. The derivative claim alleges that defendants defrauded Concord and its shareholders, breached fiduciary duties owed them and wasted corporate assets. Plaintiff seeks, *inter alia*, to enjoin the tender offer.

The Weinsteins foresaw attempts to enjoin the merger as well as the tender offer, and since the merger alone would accomplish the results they sought, they withdrew the tender offer on March 3, 1975 to avoid unnecessary legal expenses. The Weinsteins' predictions were accurate, for legal proceedings aimed at the merger were not long in coming. The first of these actions [2] was filed on March 3, 1975, and two others soon followed.[3]

The material allegations of the *Michaels* and *Krause* cases are similar. Both of these purported class actions charge violations of Sections 10(b) and . 14 of the 1934 Act and common law

---

1. *Marshel v. AFW Fabric Corp.*, 75 Civ. 1018.

2. *Michaels v. Weinstein*, 75 Civ. 1027.

3. *Krause v. Concord Fabrics, Inc.*, 75 Civ. 1064 (filed March 4, 1975), and *Swift v. Concord Fabrics, Inc.*, 75 Civ. 1465 (filed March 24, 1975).

Like the *Marshel* action, their thrust is that defendants are defrauding Concord stockholders into selling their shares at an unfair price. They also allege that the offering statement contained certain misstatements and omissions and seek, *inter alia*, to enjoin the tender offer and merger. The *Michaels* action, unlike any of the others, names Shearson as a party defendant.

The last of these four actions, *Swift v. Concord Fabrics, Inc.*, a putative class and derivative action, grounds jurisdiction on diversity of citizenship and alleges only violations of New York law. It alleges, in essence, that defendants have conspired, in breach of their fiduciary duties, to eliminate Concord's public shareholders by giving them less than adequate value for their shares under the merger of Concord and AFW. The derivative claim charges defendants with wasting Concord's assets and breaching fiduciary duties owed the corporation and its shareholders. Plaintiff seeks, *inter alia*, to enjoin the merger.

Plaintiffs move for preliminary injunctions on the ground that the proposed merger will violate Sections 10(b) and 14 of the 1934 Act and New York law.[4] They contend, essentially, that the merger should be enjoined because it serves no legitimate corporate purpose but is intended only to eliminate public shareholders by giving them inadequate compensation for their shares. As such, they claim, the merger is a device, scheme and artifice to defraud, in violation of Rule 10b–5.

In order for plaintiffs to prevail on their motions for preliminary injunctions, they must demonstrate either a combination of probable success and the possibility of irreparable injury or that they have raised serious questions going to the merits and that the balance of hardships tips sharply in their favor.[5]

Plaintiffs rely on decisions in other circuits holding mergers which eliminate public shareholders without a corporate business purpose violative of Rule 10b–5.[6] The cases in this circuit and in this district, however, are to the contrary.

In *Popkin v. Bishop*,[7] plaintiff sought to enjoin the merger of a parent corporation and its subsidiaries into a holding company of the parent corporation on the ground that the merger's exchange ratios were unfair. Plaintiff alleged that defendants breached various fiduciary duties and violated Rule 10b–5. The Court of Appeals affirmed the district court's dismissal of the complaint. In reaching its decision, the court assumed that the exchange ratios were actually unfair. It noted, however, that the complaint failed to allege misrepresentation or failure to disclose any material facts about the merger. The court noted that:

> "Section 10(b) of the Exchange Act and Rule 10b–5 are designed principally to impose a duty to disclose and inform rather than to become enmeshed in passing judgments on information elicited. * * * Underlying questions of the wisdom of such transactions or even their fairness be-

---

4. While certain plaintiffs also challenge the legality of the tender offer under Section 14 of the 1934 Act, we need not address these contentions since the tender offer has since been withdrawn. This does not preclude plaintiffs, certainly, from presenting any claims for damages they may have suffered as a result of the tender offer at a trial on the merits.

5. *Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247 (2d Cir. 1973); *Gulf & Western Indus., Inc. v. Great Atl. & Pac. Tea Co.*, 476 F.2d 687 (2d Cir. 1973); *Robert W. Stark, Jr., Inc. v. New York*

*Stock Exch., Inc.*, 466 F.2d 743, 744 (2d Cir. 1972); see *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 323 (2d Cir.), *cert. denied*, 394 U.S. 999, 89 S.Ct. 1595, 22 L. Ed.2d 777 (1969).

6. See *Bryan v. Brock & Blevins Co.*, 343 F. Supp. 1062 (N.D.Ga.1972), *aff'd*, 490 F.2d 563 (5th Cir. 1974); *Albright v. Bergendahl*, 391 F.Supp. 754 (D.Utah 1974). See also *United Funds v. Carter Products, Inc.*, CCH Fed.Sec.L.Rep. ¶ 91,288 (Balt. City Civ.Ct. May 16, 1963).

7. 464 F.2d 714 (2d Cir. 1972).

come tangential at best to federal regulation." [8]

The court concluded that injunctive relief under the federal securities laws does not lie when there has been full disclosure of a merger's terms.

In *Dreier v. The Music Makers Group, Inc.,*[9] the court dismissed a Rule 10b–5 claim for legal insufficiency in an action to enjoin a merger closely resembling the merger here. There, defendants organized a private corporation and transferred to it 60% of the public corporation's stock. The proposed merger was approved by the public corporation's controlling shareholders. Its terms provided for $3 per share to be paid to the public shareholders. The complaint alleged that the merger's sole purpose was to enrich the controlling shareholders by forcing the minority shareholders to sell at an unfair price. The court held that absent allegations of misrepresentation or nondisclosure, the complaint failed to state a claim under the federal securities laws.

■ Relying on *Popkin v. Bishop, supra,* the *Dreier* court noted that "nondisclosure remains an essential element in any section 10(b)–Rule 10b–5 action. * * * [T]he treatment of the minority shareholders may well have been grossly unfair but it was completely open. Under these circumstances plaintiff's remedy is a state court action for appraisal. . . ." The weight of authority, at least in this circuit, supports this interpretation of Rule 10b–5.[10]

■ Under this narrow interpretation of Rule 10b–5, plaintiffs' motions here for preliminary injunctions, insofar as they are premised on violations of the federal securities laws, are without merit. Plaintiffs' claims that there has been a Rule 10b–5 violation because of the unfair and inadequate price to be paid for the Concord shares and the absence of a bona fide corporate purpose for the merger are patently without merit. Rule 10b–5 simply does not encompass these alleged wrongs.

Although plaintiffs do allege a myriad of misrepresentations and nondisclosures in connection with the proposed merger, thus lumping their claims within the ambit of Rule 10b–5, we find little factual substance to these allegations. The thrust of plaintiffs' allegations of nondisclosure is that defendants did not disclose the illegality of their actions, *i. e.,* that the merger had no valid business purpose, that the price to be paid for the Concord shares is inadequate, that the Weinsteins are benefitting themselves to the detriment of the public shareholders, and that what is described as a merger is no more than a fraudulent scheme.

The proxy statement, we find, is not misleading. Nor does it fail to disclose any material information. It states expressly that AFW was organized for the purpose of causing Concord to be merged with AFW. It discloses that the Weinsteins transferred 68% of Concord's outstanding stock to AFW and, as AFW's sole owners, intend to vote in favor of the merger. The proxy statement further discloses that the public shareholders will be unable to defeat the merger. Rather, they must accept $3 per share or exercise their appraisal rights. The proxy statement includes financial statements and states that the $3 per share price is based on the opinion of Shearson.

The proxy statement further states that the purpose of the merger is to return Concord to the private ownership of the Weinsteins so that it may be op-

8. *Popkin v. Bishop, supra,* 464 F.2d at 719–20.

9. CCH Fed.Sec.L.Rep. ¶ 94,406 (S.D.N.Y. Feb. 20, 1974).

10. *Green v. Santa Fe Indus., Inc.,* 391 F. Supp. 849 (S.D.N.Y.1975); *Tanzer Economic Associates v. Haynie,* 388 F.Supp. 365 (S.D.N.Y.1974); *Kaufmann v. Lawrence,* 386 F.Supp. 12 (S.D.N.Y.1974), *aff'd per curiam,* 514 F.2d 283 (2d Cir. 1975). *Cf. Broder v. Dane,* 384 F.Supp. 1312 (S.D.N.Y.1974).

erated solely in their interests. It also details what effect the merger will have on the financial situation of the Weinsteins.

Although this is far from an exhaustive summary of the information contained in the proxy statement, it demonstrates that the statement lays bare the facts of, and the motives for, the merger. Plaintiffs have failed to demonstrate that the proxy statement misstates material facts or fails to disclose them. All that the statement appears to omit is plaintiffs' legal conclusion that the merger is illegal. We see no indication, at least at this juncture of the litigation, that the conclusion is well founded.

Accordingly, with respect to the federal claims plaintiffs have failed to demonstrate probable success or serious questions going to the merits. Moreover, the damage to be suffered by plaintiffs, should the merger be consummated and ultimately adjudicated illegal, will not be irreparable since plaintiffs have a "sufficiently adequate remedy at law"[11] in the way of monetary damages. Plaintiffs have likewise failed to demonstrate that the balance of hardships tips in their favor. Preliminary injunctive relief, therefore, must be denied as to the federal claims.

■ We find plaintiffs' contention that they are entitled to a preliminary injunction for violations of state law equally without merit. Where a merger is to be accomplished in accordance with statutory proceedings, as here,[12] appraisal is the only remedy available to dissenting shareholders.[13]

" 'In short, the merged corporation's shareholder has only one real right; to have the value of his holding protected, and that protection is given

him by his right to an appraisal. . . . He has no right to stay in the picture, to go along into the merger, or to share in its future benefits. . . . '

The remedy of an appraisal and payment for one's shares affords fair and just compensation to dissenting stockholders while allowing the overwhelming majority to proceed with the merger."[14]

■ Plaintiffs have failed to meet the requirements for a preliminary injunction on the state claims. Their motions must therefore be denied.

■ Since there is no doubt that these actions all involve common, if not identical, questions of law and fact, defendants' motion to consolidate the actions is granted to the following extent: all four actions are consolidated for pre-trial purposes; Rubin Baum Levin Constant & Friedman, Esqs., plaintiff's counsel in the *Marshel* action, are appointed general counsel for plaintiffs in all four cases; general counsel are directed to file a consolidated amended complaint encompassing all parties and all claims in the *Marshel*, *Michaels* and *Krause* cases within twenty (20) days; the *Swift* case will proceed on its original complaint.

■ Since the cases now pending are purported class actions, additional shareholder actions based on the same transactions will serve no useful purpose and will only confuse and delay this already complex litigation. All shareholders of Concord, therefore, shall be stayed from commencing further actions arising out of the transactions challenged by these actions until there has been a determination, pursuant to Rule 23(c), as to whether or not these actions may proceed as class actions.[15]

---

11. *Tanzer Economic Associates v. Haynie, supra*, 388 F.Supp. at 369.

12. See N.Y. Business Corporation Law § 901 et seq. (McKinney 1974 Supp.).

13. *Willcox v. Stern*, 18 N.Y.2d 195, 273 N.Y.S.2d 38, 219 N.E.2d 401 (1966) ; *Beloff v.*

*Consolidated Edison Co.*, 300 N.Y. 11, 87 N.E.2d 561 (1949).

14. *Willcox v. Stern, supra*, 18 N.Y.2d at 201–02, 273 N.Y.S.2d at 43, 219 N.E.2d at 404.

15. *Fields v. Wolfson*, 41 F.R.D. 329 (S.D.N.Y.1967).

Accordingly, plaintiffs' motions for preliminary injunctions and for leave to file an amended complaint are denied. Defendants' motion for consolidation, the appointment of general counsel, and a stay of additional actions is granted to the extent set forth above.

So ordered.