**Arnold MARSHEL, Plaintiff-Appellant,**

v.

**AFW FABRIC CORP. et al., Defendants-Appellees.**

**Barry L. SWIFT, Plaintiff-Appellant,**

v.

**CONCORD FABRICS INC. et al., Defendants-Appellees.**

**No. 239, Docket 75–7404.**

United States Court of Appeals, Second Circuit.

Argued Sept. 4, 1975.

Decided Feb. 13, 1976.

---

Martin A. Coleman, New York City (Rubin, Baum, Levin, Constant & Friedman, New York City, on the brief), for appellant Marshel.

Burton L. Knapp, New York City (Lipper, Lowey & Dannenberg, New York City, on the brief), for appellant Swift.

Sidney J. Silberman, New York City (Kaye, Scholer, Fierman, Hays & Handler, New York City, on the brief, Milton Sherman, New York City, of counsel), for appellees.

Before SMITH, HAYS and MESKILL, Circuit Judges.

HAYS, Circuit Judge:

Arnold Marshel and Barry L. Swift appeal from an order of the United States District Court for the Southern District of New York, denying appellants' motions for a preliminary injunction against a proposed merger between Concord Fabrics Inc. ("Concord") and AFW Fabric Corp. ("AFW") both of which are incorporated under the laws of New York. Appellants, stockholders of Concord, seek to enjoin the proposed merger on the grounds, *inter alia,* that it would violate Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 and New York law. We reverse the district court's order.

I

Prior to July, 1968 Concord was a private corporation owned entirely by defendants Alvin and Frank Weinstein and various family trusts. At that time Concord made an initial public offering of 300,000 shares of common stock at $15 per share realizing net proceeds of approximately $4,100,000.

About one year later Alvin and Frank Weinstein publicly sold 200,000 additional shares for their own accounts at a price of $20 per share. Net proceeds to the Weinsteins were approximately $3,700,000. As a result of the public offerings the Weinsteins now own approximately 68% of Concord's outstanding stock while the remaining 32% is publicly held. Since June, 1969 the publicly owned shares have been listed for trading on the American Stock Exchange. Concord had approximately 1,000 public stockholders throughout the United States.

Concord is engaged in the textile fabric business. Since becoming a public company its earnings have fluctuated considerably. Record high earnings achieved in 1968 and 1969 dropped sharply in 1970. In 1971 and 1972 severe losses were incurred. Since then the company's operations have been moderately successful. Concord stock has traded at prices between a high of $25 per share in 1969 and a low of $1 per share in late 1974.

In January, 1975 the Weinsteins initiated a plan to eliminate the public stockholders of Concord and return the company to the private ownership of the Weinstein family. As the first step toward this objective, the individual defendants organized AFW and transferred to it 1,226,549 Concord shares representing their 68% ownership of Concord. In exchange for the Concord stock the Weinsteins received 100% of AFW's stock. AFW performs no function other than acting as the corporate vehicle for the Weinstein's stock interest in Concord. The next step on the road to "going private" came on February 6 when AFW made a tender offer for all the publicly held Concord shares at a price of $3 per share. This purchase was to be financed through bank loans to AFW which would ultimately become the obligations of Concord. AFW's Offer to Purchase stated that after the offer expired AFW would cause a merger between itself and Concord regardless of whether any shares were tendered. Under the terms of the proposed merger the Weinsteins, as sole stockholders of AFW, would receive all the stock of the surviving company while the Concord stock held by the public would be cancelled with each stockholder entitled to receive $3 per share of cancelled stock. The Offer to Purchase also stated that since AFW owned more than the percentage of Concord's stock required to consummate the merger under New York law, stockholders who did not tender their shares would be unable to prevent the subsequent merger by voting against it at the shareholders' meeting. According to the offer AFW. expected the merger to be completed in April, 1975.

On February 28, 1975 Marshel commenced a shareholder's derivative and class action in the United States District Court for the Southern District of New York seeking to enjoin the AFW tender offer. Appellant Swift brought an action in the Supreme Court of the State of New York seeking the same relief as Marshel. On March 3 the defendants withdrew the Offer to Purchase and returned all Concord shares which had been tendered in response to it. They pursued the plan of merger between Concord and AFW however, mailing to the public Concord shareholders on March 17, 1975 a Proxy Statement and Notice of Special Meeting of Shareholders of Concord for the purpose of acting upon the merger. Favorable shareholder approval was, as stated in the proxy materials, a foregone conclusion given the Weinsteins' 68% ownership of Concord. Moreover, the lack of any corporate purpose for the merger was clearly revealed in the proxy statement.

> "The purpose of the proposed merger of AFW into the Company [Concord] is to return the Company to the status of a privately-held corporation owned by the Weinstein family. Upon consummation of the merger, the Weinsteins will be the sole stockholders and directors of the Company, and will thus be able to determine all policies of the Company, such as salaries for themselves and others, dividends and business activities, without public scrutiny and solely with regard to their own interests."

After the tender offer was withdrawn, Marshel amended his complaint to include a challenge to the merger. Swift discontinued his state court suit and filed a complaint in the federal court seeking, like Marshel, to enjoin the merger.[1] Marshel's complaint contains class action and derivative counts relating to the proposed merger alleging various violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (1970), and the Rules and Regulations of the S.E.C. promulgated thereunder. Jurisdiction is based upon Section 27 of the Act, 15 U.S.C. § 78aa (1970). Marshel also asserts pendent claims of fraud and breach of fiduciary duties by defendants under New York law. Jurisdiction in the Swift action is based upon diversity of citizenship, 28 U.S.C. § 1332(a), and the allegations in the complaint raise issues identical to the pendent claims in the Marshel action. Since we find that the challenged conduct constitutes a violation of Section 10(b) and Rule 10b–5 we do not reach the state law claims.

## II

Appellants contend that unless a legitimate corporate purpose of Concord is furthered by elimination of the minority public shareholders the proposed merger may not be allowed to proceed. Appellees concede there is no such underlying purpose served here. They admit AFW was organized solely as a vehicle to effectuate, in essence, a forced cash repurchase by Concord of its public stockholders' shares at a time and price determined entirely by the controlling stockholders and for their sole benefit. AFW has no function other than as a device facilitating the Weinsteins' attempt to utilize the state merger statute to accomplish indirectly what would be impossible to achieve through normal corporate processes because of settled law prohibiting the elimination of minority shareholders by vote of the majority.[2] See *Bryan v. Brock & Blevins Co.*, 490 F.2d 563 (5th Cir.) cert. denied, 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974); cf. *Lebold v. Inland Steel Co.*, 125 F.2d 369 (7th Cir. 1941).

Appellees nevertheless argue that absence of any corporate purpose is irrelevant because the proposed merger would comply in all respects with the requirements of the merger statute, N.Y. Business Corporation Law §. 901 *et seq.* (McKinneys Supp.1975), and, under that statute, appraisal rights are the exclusive remedy provided for dissenting shareholders. Whether the challenged merger is valid under state law [3] is an issue we do not decide. However, in determining the applicability of the federal securities law, we must look through the technical form to ascertain the substance of the transaction. What this purported "merger" amounts to is a scheme by the appellees, having previously taken advantage of public financing, to appropriate for their personal benefit the entire stock ownership of·Concord at a price determined by them and paid out of the corporate treasury at a cost of over $1,600,000.[4]

1. Two other shareholder injunctive suits attacking the proposed merger between Concord and AFW were brought in the district court. *Michaels v. Weinstein*, 75 Civ. 1027; *Krause v. Concord Fabrics, Inc.*, 75 Civ. 1064. All four actions were consolidated and heard by Judge MacMahon. *Marshel v. AFW Fabric Corp.*, 398 F.Supp. 734 (S.D.N.Y.1975). Only the Marshel and Swift actions are the subject of this joint appeal.

2. While New York has a statute permitting the "freeze-out" of splinter minority interests, N.Y. Business Corporation Law § 905 (McKinney Supp.1975), the majority stockholder must own at least 95% of the corporation's share in order to employ this provision. See *Willcox v. Stern*, 18 N.Y.2d 195, 273 N.Y.S.2d 38, 219 N.E.2d 401 (1966); *Beloff v. Consolidated Edison Co.*, 300 N.Y. 11, 87 N.E.2d 561 (1949).

3. We note however that the proposed merger has been enjoined in state court proceedings commenced by the Attorney General of the State of New York under the Martin Act, N.Y. General Business Law § 352 (McKinney 1967). *People v. Concord Fabrics, Inc.*, 83 Misc.2d 120, 371 N.Y.S.2d 550, N.Y.L.J., June 13, 1975 at p. 15.

4. The proxy materials reveal the effect of the merger on the Weinstein family:

    "The effect of the proposed merger will also be that without any additional investment on the part of the Weinstein family their interest in the stockholders' equity of the Company will be increased from approximately $9,494,-000 (representing 68% of equity as at February 2, 1975) to approximately $12,285,000 (representing 100% of such equity on a pro

Such conduct is proscribed by the language of Section 10(b) [5] and Rule 10b–5. [6] We do not regard the existence of the state appraisal remedy as negating the appellants' rights under federal law. *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *Vine v. Beneficial Finance Co.,* 374 F.2d 627, 635–36 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). "Where Rule 10b–5 properly extends, it will be applied regardless of any cause of action that may exist under state law." *Popkin v. Bishop,* 464 F.2d 714, 718 (2d Cir. 1972). Furthermore, as we stated in *Popkin,* a controlling shareholder's "ability to push through the merger—with or without any other shareholder's vote—cannot by itself defeat a claim for federal injunctive relief." 464 F.2d at 718. We hold that when controlling stockholders and directors of a publicly-held corporation cause it to expend corporate funds to force elimination of minority stockholders' equity participation for reasons not benefiting the corporation but rather serving only the interests of the controlling stockholders such conduct will be enjoined pursuant to Section 10(b) and Rule 10b–5 which prohibits "any act, practice, or course of business which operates or would operate as a fraud . . . . in connection with the purchase or sale of any security."

In *Drachman v. Harvey,* 453 F.2d 732, 736–38 (2d Cir. 1972) (rehearing en banc) shareholders in Harvey Aluminum, Inc. brought a derivative action seeking damages for losses allegedly suffered when the controlling shareholder of Harvey, Martin Marietta Corporation, caused an improvident redemption of an outstanding issue of Harvey's convertible debentures in order to prevent their possible conversion and consequent dilution of Martin Marietta's voting control. This Court held that a sufficient claim of fraud against the corporation in connection with a purchase of securities had been stated within the meaning of § 10(b) and Rule 10b–5. See also, *Superintendent of Insurance v. Bankers Life & Casualty Co.,* supra; *Schoenbaum Insurance v. Firstbrook,* 405 F.2d 215 (2d Cir. 1968) (en banc), cert. denied sub nom., *Manley v. Schoenbaum,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *Hooper v. Mountain State Securities Corp.,* 282 F.2d 195 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). In *Schoenbaum* it was alleged that the Aquitane Company of Canada, Ltd., the controlling shareholder of Banff Oil, Ltd., exercised a controlling influence over the issuance to it of Banff treasury stock for a wholly inadequate consideration. This Court held that, if established, the transaction constituted a violation of Rule 10b–5.

forma basis, giving effect to consummation of the merger . . .) and their interest in the Company's net earnings for the fiscal year ended September 1, 1974 will increase from approximately $354,000 (68% of such earnings) to approximately $442,000 being 100% of such earnings on a pro forma basis. . . ."

5. Section 10 provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations

as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

6. "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, "in connection with the purchase or sale of any security."

In the instant case a similar situation presents itself. The controlling shareholders of Concord have devised a scheme to defraud their corporation and the minority shareholders to whom they owe fiduciary obligations by causing Concord to finance the liquidation of the minority's interest with no justification in the form of a valid corporate purpose. The federal securities law does not confer jurisdiction for instances of corporate mismanagement or self-dealing absent fraud intrinsic to a securities transaction. Here, however, a purchase and sale of securities is at the heart of the fraudulent scheme. See, e.g., *Superintendent of Insurance v. Bankers Life & Casualty Co.,* supra 404 U.S. at 10–13, 92 S.Ct. 165 (1971); *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379–80 (2d Cir. 1974), cert. denied, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *A. T. Brod & Co. v. Perlow,* 375 F.2d 393, 397 (2d Cir. 1967); *Ruckle v. Roto American Corp.,* 339 F.2d 24, 29 (2d Cir. 1964).

### III

The district court denied plaintiffs' motions for a preliminary injunction on the ground that since defendants had disclosed all material facts concerning the merger to the minority shareholders in the proxy statement, a cause of action based on § 10(b) and Rule 10b–5 was precluded by this Court's decision in *Popkin v. Bishop,* supra. *Popkin* is inapposite. There a derivative action was brought to enjoin a merger on the grounds that the exchange ratios for the conversion of the common stock of the merging corporations into the stock of the surviving corporation were "unfair" to plaintiff. 464 F.2d at 717. The propriety of the merger itself was not challenged.[7] Since the complaint contained "no allegation or hint of any misrepresentation by defendants or of a failure on their part to disclose any material fact in connection with the merger proposal," 464 F.2d at 718, its dismissal was upheld by this Court because no fraud had been stated. Compare

*Schlick v. Penn-Dixie Cement Corp.,* supra. In the present case the "merger" itself constitutes a fraudulent scheme because it represents an attempt by the majority stockholders to utilize corporate funds for strictly personal benefit. Under these circumstances it would surely be anomalous to hold that a cause of action is stated under § 10(b) and Rule 10b–5 when the fraudulent conduct in connection with a purchase or sale of securities includes deception but that similarly fraudulent practices carried out with prior disclosure to the helpless victim do not give rise to a Rule 10(b)–5 claim. Neither the statutory language nor the broadly remedial purposes of the Act, see, e.g., *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), allow such a distinction.

J. JOSEPH SMITH, Circuit Judge (concurring):

I concur. I find it difficult to reconcile the 10(b) basis of the holding with the opinion in *Popkin v. Bishop,* 464 F.2d 714 (2d Cir. 1972). However, this case illustrates the opportunities for fraudulent treatment of securities holders in corporations "going private" for no legitimate corporate purpose even though with full, even brazen disclosure. It casts doubt on the desirability of a "full disclosure" bar in all situations. In any case, grant of the injunction here is sustainable on the ground of breach of the fiduciary duty under New York law of the majority shareholders in their admitted self-dealing. Compare, *Bryan v. Brock and Blevins Co.,* 490 F.2d 563 (5th Cir.), cert. denied, 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974).

---

7. In fact, it appears that the merger was required by the terms of a Stipulation of Settlement filed in an earlier lawsuit. 464 F.2d at 716.