VERNON J. ROCKLER AND CO., INC., a Minnesota Corporation, and Vernon J. Rockler, as Trustee of the Vernon J. Rockler and Co., Inc. Profit Sharing Trust

v.

MINNEAPOLIS SHAREHOLDERS COMPANY, a Minnesota Corporation, et al.

Civ. No. 4–75–366.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 13, 1977.

Stephen C. Davis, Dorfman, Katz, Taube, Lange & Davis, Minneapolis, Minn., Richard F. Watt and Russell Woody, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for plaintiffs.

Stuart W. Rider, Jr., William J. George, and Timothy R. Thornton, Rider, Bennett, Egan, Johnson & Arundel, Minneapolis, Minn., for Minneapolis Shareholders, Inc.

Hyman Edelman and Charles Quaintance, Jr., Maslon, Kaplan, Edelman, Borman, Brand & McNulty, Minneapolis, Minn., for all individual defendants other than Jacobs and Finkelstein.

Robert V. Atmore and Nadine Strossen, Lindquist & Vennum, Minneapolis, Minn., for Irwin Jacobs and Grain Belt Breweries, Inc.

Samuel D. Finkelstein, Minneapolis, Minn., for Hyman Finkelstein.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

Minneapolis Shareholders, Inc. (the Company), a nonoperating corporation composed of the former shareholders of Grain Belt Breweries, Inc., seeks to preliminarily enjoin its largest shareholder, Irwin L. Jacobs, from proceeding with a tender offer directed to the other shareholders of the Company. Jacobs offers $5.30 in exchange for the tender of a share and the tendering shareholder's release of any claims he or she may

have against any of the defendants in this action. The Company claims that the tender offer violates Section 14(e) of the Williams Act amendments to the Securities and Exchange Act of 1934, 15 U.S.C. § 78n(e) (1970) in that the proxy statement supporting the offer omits and misstates material facts; that the offer violates Section 14(e), Section 10(b) of the 1934 Act, 15 U.S.C. § 78j (1970), and Rule 10b–5 since it is made without a legitimate corporate purpose and for inadequate consideration; and the offer is an unlawful extrajudicial attempt to settle a class action and derivative suit.[1] Plaintiffs move for a preliminary injunction on the same grounds. Although the individual defendants other than Jacobs and Hyman Finkelstein have not moved for a preliminary injunction, they have injected one additional argument. They claim that Jacobs, as the largest stockholder in the company, owes a fiduciary duty to the other shareholders, which duty was breached by the offer.

■ The law in this circuit is clear with respect to the showing movants must make in order to obtain a preliminary injunction. They must show a substantial probability of success at trial and irreparable injury to the moving party absent such issuance. *Minnesota Bearing Co. v. White Motor Corp.,* 470 F.2d 1323 (8th Cir. 1973). The court also indicated other factors which might be considered by the court, specifically absence of substantial harm to other interested parties and absence of harm to the public interest. This latter statement impliedly affirmed the practice of this district in which all four tests must be met before a preliminary injunction will issue. *Cox v. Northwest*

*Airlines, Inc.,* 319 F.Supp. 92 (D.Minn.1970). These factors will be considered seriatim.

The aforementioned claims were fully ventilated through briefs and oral arguments on December 27–28, 1976 on the same parties' motions for a temporary restraining order. Nothing much was added to movants' position at the hearing on January 6, 1977. However, Jacob's position in opposition to the issuance of a restraint was considerably strengthened by the testimony of one of Jacobs' attorneys, Thomas H. Garrett, who was called by the Company. He testified regarding communications between members of his firm and the Securities and Exchange Commission which had become interested in the offer after receiving negative reports from counsel for movants. After these discussions, the SEC's Chicago office indicated that if Jacobs made a supplementary disclosure to the shareholders further detailing this lawsuit and explaining certain tax consequences of the tender, the SEC would not investigate further or initiate enforcement proceedings. Although several post-hearing letters have been submitted to the court indicating that the SEC is taking a second look, nothing has been placed in the record. The SEC has not filed a motion to intervene nor has it instituted its own action. Therefore, the court will inquire no further than Garrett's testimony.

Garrett and another of Jacobs' attorneys, Robert Atmore, stated to the court that the supplementary communications, which would include a recision privilege for previously tendering shareholders, would issue shortly. There was no evidence contradicting Garrett's reflection of the position of

---

1. Of these three arguments and the one advanced by the individual defendants other than Jacobs and Hy Finkelstein, only the claim regarding improper settlement of a class action and derivative suit appears to be properly before the court. The claims attacking the substance of the offer and the alleged breach of fiduciary duty bear no relation to the substance of this lawsuit, claims relating to the sale of Grain Belt's assets to Jacobs. The Company has filed a cross-claim against Jacobs to support these allegations. Plaintiffs argue that all of the claims are ancillary to the lawsuit.

These parties were directed to file a new action if they desired to further challenge the tender offer. As of the date of this order, this had not been done. Although the court will consider all claims for purposes of the preliminary injunction, it should be noted that this is only done due to the exigent circumstances. This action should not be construed as releasing movants from the obligation to file a new lawsuit if they want to continue their challenge. *A fortiori,* the action of the court in this regard should not be considered as precedent in other cases.

the SEC. Therefore, it appears that the offer has been scrutinized by the administrative agency possessing expertise in this area. Furthermore, this scrutiny was instigated by movants, and movants have had a full opportunity to involve themselves in the subsequent review. This review has resulted in an acceptable end product. Although the SEC does not formally approve submissions of this nature and its regulations provide that it is a material misstatement for an offeror to state that such approval has been received, this non-enforcement posture indicates, at least at this stage of the litigation, that the statement meets the statutory test. *General Time Corp. v. Talley Industries, Inc.*, 403 F.2d 159 (2nd Cir. 1968), *cert. denied*, 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969).

Movants initially pointed to numerous alleged deficiencies in the proxy statement. Several of these dealt with the explanation of this lawsuit. The SEC specifically dealt with these omissions, and supplementary material will be mailed. The same can be said regarding the tax consequences of the tender offer. Movants alleged other deficiencies before the SEC which were communicated to Jacobs' lawyers. They opined that the original disclosures were sufficient and the agency did not renew its demands for disclosure. In addition, the Company has responded to the offer by mailing a four page letter to all shareholders which presents its position. Finally, further review by the SEC is not precluded. The cooperative attitude of Jacobs' attorneys is apparent and if further disclosures are required, they will presumably be made. In short, this case does not present the situation where an extraordinarily high degree of disclosure is required of the offeror because the timing of the offer precludes responses from the target company and other interested parties. See, *Missouri Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851 (2nd Cir. 1974) *cert. denied*, 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123 (1974) and *Commonwealth Oil Refining Co., Inc. v. Tesoro Petroleum Corp.*, 394 F.Supp. 267 (S.D.N.Y. 1975). This is especially true due to Jacobs' grant of a recision option to shareholders who tendered prior to the dissemination of all information. Rather, it appears that the substantial information available to the shareholders, from all sources, will enable them to make an informed and intelligent choice. *Twentieth Century Fox Film Corp. v. Lewis*, 334 F.Supp. 1398 (S.D.N.Y.1971) and *McConnell v. Lucht*, 320 F.Supp. 1162 (S.D.N.Y.1970). The information resulting from the give and take of the tender offer process will be far superior to that which can be supplied by an economically disinterested third party, the court.

Movants argue that even assuming full disclosure, the offer violates Section 14(e) and the Minnesota securities antifraud statutes and will violate Section 10(b) and Rule 10b–5 if consummated since the offer is made for an inadequate consideration and without a legitimate corporate purpose. This claim raises several novel issues, one of which is whether the substantially identical language of the statutes renders them substantively equivalent. This issue is raised because the only two cases which support movants' theory that the securities laws make actionable unfair offers as well as offers which are not fully disclosed are cases in which plaintiffs' complaints were based on Section 10(b) and Rule 10b–5. This statute and regulation appear to be unavailable to movants by virtue of the purchaser-seller standing doctrine announced in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Since the court decides that the cases are distinguishable for other reasons, these issues must await resolution for a case in which they are directly presented.

The two cases relied upon by movants are *Marshel v. AFW Fabric Corp.*, 533 F.2d 1277 (2nd Cir. 1976), *cert. granted and remanded for consideration of mootness*, —— U.S. ——, 97 S.Ct. 228, 50 L.Ed.2d 162 (1976) and *Green v. Santa Fe Industries, Inc.*, 533 F.2d 1283 (2nd Cir. 1976), *cert. granted*, —— U.S. ——, 97 S.Ct. 54, 50 L.Ed.2d 74 (1976). Both of these cases introduce the novel concept that the federal securities statutes are aimed not only at full

disclosure but at correcting the substantive terms of allegedly unfair transactions. The Court of Appeals for the Second Circuit recognized the novelty of this proposition in its denial of a rehearing *en banc* of *Green* when it stated that the rehearing was denied not because the issues were insignificant or well-settled, but because the Supreme Court would surely grant certiorari to consider such an important and far-reaching question, *Green v. Santa Fe Industries, Inc.*, 533 F.2d 1309 (2nd Cir. 1976). Therefore, a court should be extremely careful in applying the proposition announced by those cases to a situation which does not present substantially similar facts. Here, the facts are very different, and the policy reasons which impelled the result in those cases are not present.

Both *Marshel* and *Green* arose in a merger situation. Statutes of New York (considered in *Marshel*) and Delaware (considered in *Green*) permitted, *inter alia*, shareholders with a substantial majority of stock to merge their corporations into others without a shareholder vote in which the minority shareholders could register their dissent. The proxy statement preceding the merger in *Marshel* (no statement was required or sent in *Green*) fully explained that under the terms of the merger, the majority shareholders would receive stock in the surviving corporation and the minority shareholders would get cash. Thus, although the minority shareholders were fully cognizant of their being forced out of the corporation, they had no choice. The courts found that such an action constituted a violation of section 10(b) and Rule 10b–5 even though full disclosure had been made. The basic evil was found in the majority shareholders' ability to divest the minority shareholders' interests with corporate funds for no legitimate corporate reason.

Several distinguishing factors are immediately apparent. First, no majority shareholder is involved here. Although Jacobs is the largest shareholder, he only owns 8.9% of the Company's stock. Therefore, the essential element of a breach of a majority shareholder's fiduciary duty is missing. If Jacobs manages to gain control, then he will arguably be subject to certain fiduciary obligations. Actions taken thereafter may be scrutinized in that light. However, that point has not yet been reached. Second, the shareholders in the present situation have a choice. They are not being divested against their will. They can tender their shares or remain in the corporation. *Marshel* and *Green* have been held to not apply to tender offers for precisely this reason, *Raffa v. The Mechanics Building Material Co., Inc. Employee Stock Ownership Trust*, 1976 CCH Fed.Sec.L.Rep. ¶ 95535 (E.D.N.Y. 1976). Finally, this element of choice gives Jacobs' opponents a powerful extrajudicial weapon which was not available to the minority shareholders in *Marshel* and *Green*. They can mount their own campaign to either fight the offer directly or by means of another offer. In many of these cases the majority shareholders gained control via a tender offer. *Marshel* and *Green* only come into play, if at all, when the controlling shareholders attempt to eliminate the remaining minority shareholders by means of merger. See, *Merrit v. Libby, McNeill, and Libby*, 533 F.2d 1310 (2nd Cir. 1976) and *Marsh v. Armada Corp.*, 533 F.2d 978 (6th Cir. 1976).

Some confusion has arisen regarding the application of Rules 23(e) and 23.1 of the Federal Rules of Civil Procedure to the offer. Rule 23(e) provides:

"A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

Rule 23.1 applies this requirement to stockholders' derivative actions. Movants allege that the offer is an improper attempt to settle a class action and derivative suit since acceptance of the tender is conditioned upon the tendering shareholder's release of his claims in this action. Impropriety allegedly stems from the fact that Jacobs has not sought formal court approval of the terms of the settlement offer. In the first place, it is clear that Rules 23(e)

and 23.1 have no direct application to the situation where a defendant attempts to negotiate settlements with individual class members as distinguished from attempts to settle the class action itself. *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770 (2nd Cir. 1972), and *Wolf v. Barkes*, 348 F.2d 994 (2nd Cir. 1965).

The only limitation under the cited rules which has been placed on a defendant's freedom to settle in this situation is that the settlements cannot "affect" the rights of non-settling class members. *Weight Watchers*, supra at 775. Although this term, standing alone, sweeps broadly, it must be considered in context. In *Weight Watchers*, the court stated that individual settlements were permissible even if the cumulative result of the settlements was that a class action was no longer maintainable due to an insufficient number of remaining class members. Undoubtedly, this result affects the rights of non-settlers. However, the court stated that such a result would not violate Rule 23(e). When the other portions of .the opinion are perused, it becomes clear that an improper effect only occurs when the settlements impinge on the substance of plaintiffs' complaint. Here, no such result will occur since Jacobs is only attempting to diminish the population of the class. Even if he succeeds in gaining control of the Company, non-settling class members will still have their individual claims, and if enough refuse to settle, a class claim. The derivative action will still be available since the right to institute such an action is predicated on the directors' refusal to pursue the claim. If a recovery is made for the corporation and Jacobs is held liable, the court can fashion a decree which would preclude Jacobs from sharing in it. *Perlman v. Feldmann*, 219 F.2d 173 (2nd Cir. 1955).

In an attempt to apply the policies which support Rule 23(e) to the situation presented at bar, many districts have adopted local rules which forbid communication between defendants and class members without judicial supervision. No such rule has been adopted in this district. However, it appears, and all parties concede, that a court has the inherent equitable power to supervise communications with class members. In the present case, Jacobs presented all parties and the court with a copy of the proxy statement at the time he mailed it to the shareholders. As discussed previously, this communication, as supplemented by Jacobs and the Company, provided a lengthy and unbiased account of the litigation. In addition, the statement, since it was made with regard to a tender offer, was written with full attention to the applicable securities statutes and regulations. The real possibility of litigation regarding the offer, which, of course, was subsequently realized, was a substantial incentive for full and accurate disclosure. Therefore, the court finds that the communication provided data sufficient to enable each shareholder to make an informed choice to settle or proceed.

■ The individual defendants other than Jacobs and Hy Finkelstein claim that the tender offer violates Jacobs' fiduciary duty to other shareholders of the Company. Of course, before there can be a violation, there must be a duty. As discussed previously, Jacobs is not a majority shareholder. Therefore, the existence of a duty must be found in other sources. These defendants point to Minn.Stat. § 301.14(3) and (4) (1974) for the proposition that a shareholder owes a fiduciary duty not to obtain any unfair advantage with respect to distribution of the Company's assets. This statute basically provides that unless there is a contrary provision in the articles of incorporation, all shares of a corporation are equal. Although counsel's creativity is commendable, the court cannot construe this statute, without more, as establishing the claimed fiduciary duty. Without further plumbing the depths of the extremely controversial area dealing with what duties are owed by even majority shareholders, it is clear that the statute has no application in this regard. The statute allows its mandate to be varied by the articles of incorporation. Surely, a fiduciary duty cannot be so varied. The cases and secondary sources cited arguably establish that a corporation owes a

fiduciary duty to its shareholders. However, they do not support the proposition that the shareholders owe fiduciary duties to each other.

Since the court has previously dealt with each party's claim of injury, a short comment here will suffice. It will be remembered that in this circuit, movants' harm must be irreparable to trigger the injunction while opponent's need only be substantial to bar it. Here, Jacobs will suffer not only substantial but irreparable injury if an injunction issues. He has invested a substantial sum of money in preparing the offer. These expenses will be unrecoverable if the offer is enjoined. *Symington Wayne Corp. v. Dresser Industries, Inc.*, 383 F.2d 840 (2nd Cir. 1967). As the Company admits, its basic claim of irreparable harm is made on behalf of its shareholders who decide to tender under the influence of alleged misstatements and omissions. This also appears to be plaintiffs' claim. This shareholder injury is not irreparable since there is an adequate legal remedy in the form of damages should movants prevail on the merits. *Merrit v. Libby, McNeill, and Libby*, supra. There also appears to be substantial harm to those shareholders who desire to tender, even assuming lack of full disclosure. Since distribution has been delayed for over a year, there might very well be shareholders who desire to seize an opportunity to sell their stock now at a price in excess of the market price. This opportunity will be lost if the offer is enjoined. Thus, the court finds that the hardships do not tip in favor of movants.

The moving parties have not shown substantial probability of success at trial or irreparable injury absent the issuance of a temporary injunction. The motions for a preliminary injunction are DENIED.

These expressions shall constitute the court's finding of facts and conclusions of law.