David **GOLDBERG**, suing derivatively in the right and for the benefit of Universal Gas & Oil Company, Inc., Plaintiff,

v.

**Yaacov MERIDOR et al., Defendants.**

and

**Universal Gas & Oil Company, Inc., Nominal Defendant.**

No. 76 Civ. 555.

United States District Court, S. D. New York.

Feb. 10, 1977.

Turchin & Topper, New York City, for plaintiff.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for defendants Maritime Fruit Carriers Company Limited, Maritimecor, S.A., David Meridor, Shlomo Erell, Gideon Ben Aaron, Haim Rafaeli and Jacob Sutton.

Wender, Murase & White, New York City, for nominal defendant Universal Gas and Oil Co., Inc.

Singer, Hutner, Levine & Seeman, New York City, for defendant Henry A. Singer.

Mudge, Rose, Guthrie & Alexander, New York City, for defendants Ara A. Cambere and Hornblower & Weeks, Hemphill Noyes, Inc.

Willkie, Farr & Gallagher, New York City, for defendants Yaacov Meridor and Mila Brenner.

Coudert Brothers, New York City, for defendant H. Struve Hensel.

Townley, Updike, Carter & Rodgers, New York City, for defendant Martin Siem.

Howrey & Simon, Washington, D. C., for defendant Martin Siem.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant H. L. Federation.

LASKER, District Judge.

David Goldberg sues derivatively on behalf of Universal Gas & Oil Co., Inc. (UGO), charging UGO's officers and directors and its two parent corporations with corporate mismanagement and breach of fiduciary duty. Specifically, Goldberg challenges a transaction between UGO and Maritimecor, S.A., whereby UGO issued 4,200,000 shares of its stock to Maritimecor in return for all of the latter's assets and liabilities. Prior to the transaction Maritimecor owned 78% of UGO, and was in turn wholly owned by the defendant Maritime Fruit Carriers Co., Ltd. (MFCC). Goldberg alleges that the terms of this transaction were grossly "unfair" to the minority shareholders of UGO and that the transaction itself constituted a violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 40 C.F.R. 240.10b–5.[1]

---

1. In the original Verified Complaint Goldberg alleged as well that the defendants' conduct constituted a breach of fiduciary duty under state law. The defendants moved for an order directing Goldberg to post security for expenses and costs as required under Section 627

According to the Amended Verified Complaint, the defendants conspired to enrich Maritimecor and MFCC at the expense of UGO. The plan was effected by raising funds from the public and using the proceeds for the benefit of the two corporate defendants. (¶ 10) (Numbers in parentheses refer to the paragraphs of the Amended Verified Complaint) In furtherance of this scheme the following events took place:

1) In May, 1972 UGO sold stock and debentures in a public offering for the stated purpose of raising funds to finance the construction and purchase of three ships to transport liquefied gas; (¶ 11)

2) In 1974 two of the ship construction contracts were sold for a $14 million profit; (¶ 12)

3) In 1974 and 1975 the defendants caused loans to be made by UGO to Maritimecor so that by August, 1975 Maritimecor owed UGO $7 million; (¶ 13)

4) In August, 1975 UGO agreed to issue 4,200,000 shares of its stock to Maritimecor in exchange for all of the latters' assets (excluding 2,800,000 shares of UGO already held by Maritimecor) and liabilities. (¶ 14)

The purchase of Maritimecor's assets and liabilities, which Goldberg believes has been effected, (¶ 15), was "fraudulent and unfair" in that the net value of Maritimecor's assets was far less than the value of the UGO shares exchanged, and "the purpose and intent of said transaction was to cause the dissipation of the substantial assets of UGO for benefit of the defendants Maritimecor and [MFCC]." (¶ 16) The defendants were fully aware that the transaction had no business purpose, had no benefit for UGO, was not an arm's length transaction and represented self-dealing and breach of fiduciary duty. (¶ 18)

Although these allegations clearly constitute a valid state law claim, their sufficiency in federal law is open to serious question. Conspicuously absent is any allegation of deceit, misrepresentation or falsehood with regard to the events which transpired. Urging that the lack of any claimed deception is fatal to a cause of action under Rule 10b–5, many of the defendants move to dismiss for failure to state a claim. Fed.R. Civ.P. 12(b)(6).[2]

Until fairly recently there was little room for doubt that the defendants' position is correct. The element of deception has always been a central component of a 10b–5 violation. See, e. g., *O'Neill v. Maytag,* 339 F.2d 764 (2d Cir. 1964). Although decisions like *Drachman v. Harvey,* 453 F.2d 722 (2d Cir. 1972) (en banc) and *Schoenbaum v. Firstbrook,* 405 F.2d 215 (2d Cir. 1968) (en banc), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969) significantly expanded the scope of the Rule, finding claims to be stated where the essence of the allegations involved corporate self-dealing in relation to securities transactions, the element of deceit remained present, albeit somewhat less central to the challenged behavior. In *Popkin v. Bishop,* 464 F.2d 714 (2d Cir. 1972), the court reaffirmed that deception is an indispensible element of a 10b–5 claim. The *Popkin* court analyzed

of the New York Business Corporation Law. The motion was granted and on July 29, 1976 an order was entered directing, *inter alia,* that Goldberg would either post security, rally support from other UGO shareholders sufficient to be exempted from the security requirement, or amend the complaint to eliminate causes of action based upon state law.

Thereupon Goldberg filed the Amended Verified Complaint (Amended Complaint), containing essentially the same allegations but omitting any reference to a state law claim. Nevertheless, the amended complaint avers that "Plaintiff believes, *without limitation,* that the Court may find § 10(b) of the Exchange Act and of Rule 10b–5 . . . applicable to the facts which plaintiff will prove." (¶ 25, Amended Complaint) (emphasis supplied) This unusual pleading strongly suggests that Goldberg still intends to leave open the possibility of recovering under state law.

**2.** In the alternative they seek to require Goldberg to post security for expenses and costs. Since, as explained in Note 1, *supra,* we agree with the defendants that state law claims are implicit in the amended complaint despite the absence of direct reference to them, we would be inclined to grant the motion for security absent an express waiver of intent to recover on common law causes of action. Our disposition of the motion to dismiss, however, makes such a ruling unnecessary.

the more expansive prior decisions and concluded that their focus on improper self-dealing "did not eliminate non-disclosure as a key issue in Rule 10b–5 cases." 464 F.2d at 719.

Goldberg argues that all of this has been changed by two recent landmark decisions in this Circuit. In *Marshel v. AFW Fabric Corp.*, 533 F.2d 1277 (2d Cir.), *vacated and remanded for consideration of mootness*, 429 U.S. 881, 97 S.Ct. 228, 50 L.Ed.2d 162 (1976) and *Green v. Santa Fe Industries, Inc.*, 533 F.2d 1283 (2d Cir.), *cert. granted*, 429 U.S. 814, 97 S.Ct. 54, 50 L.Ed.2d 73 (1976), the court held that it is not necessary to plead or prove deception in the context of a challenge under Rule 10b–5 to a merger effectuated for the purpose of "going private." Goldberg contends that this case is governed by *Marshel* and *Green* because here, as in those cases, "the transaction itself is attacked as a fraud on UGO." (Memorandum in Opposition at 7) The defendants argue that *Popkin* controls. We agree.

*Popkin* was a derivative action brought by a shareholder in Bell Intercontinental Corp. to enjoin a proposed merger of Bell and two of its subsidiaries into the Equity Corporation, which was the controlling entity of the other three corporations. The plaintiff alleged that the terms of the deal were grossly inadequate to the shareholders of Bell and that the officers and directors of the corporation breached a variety of fiduciary duties in advocating the transaction. Nevertheless, despite its recognition that *Drachman* and *Schoenbaum* had significantly extended the reach of 10b–5 to include claims of corporate mismanagement and self-dealing in connection with securities transactions, the court upheld the lower court's dismissal of the complaint for failure to state a claim. The fatal defect was the absence of an "allegation or hint of any misrepresentation by defendants or of a failure on their part to disclose any material fact in connection with the merger proposal." 464 F.2d at 718.

*Marshel* was a derivative suit brought by minority shareholders in Concord Fabrics

Inc., who sought to enjoin a merger between Concord and AFW Fabrics Corp., an entity created and wholly owned by the majority shareholders of Concord for the sole and express purpose of "going private." The merger was to be effectuated under the New York corporation law which requires approval by shareholder vote, but the result was a foregone conclusion because the majority interests held enough shares to determine the outcome. The plaintiffs conceded that the terms, purpose and effect of the proposed merger had been fully disclosed. The court, however, viewed the merger as a

> "scheme by [the majority], having previously taken advantage of public financing, to appropriate for their personal benefit the entire stock ownership of Concord at a price determined by them and paid out of the corporate treasury at a cost of over $1,600,000." 533 F.2d at 1280.

Such a scheme was held to be within the proscription of 10b–5. The court framed its holding carefully and narrowly:

> "We hold that when controlling stockholders and directors of a publicly-held corporation cause it to expend corporate funds to force elimination of minority stockholders' equity participation for reasons not benefiting the corporation but rather serving only the interests of the controlling stockholders such conduct will be enjoined pursuant to Section 10(b) and Rule 10b–5 which prohibits 'any act, practice, or course of business which operates or would operate as a fraud . . . in connection with the purchase or sale of any security.'" 533 F.2d at 1281

*Green* reached the same conclusion where the challenged transaction was a Delaware short-form merger under which no prior notice to or approval by the shareholders was required. Like *Marshel* the opinion is spiced with language expressing the fundamental unfairness and artifice of a "going private" merger and held only that "a complaint alleges a claim under Rule 10b–5 when it charges, in connection with a Delaware short-form merger, that the majority

has committed a breach of its fiduciary duty to deal fairly with minority shareholders by effecting the merger without any justifiable business purpose." 533 F.2d at 1291.

It is, as Judge Smith noted in his concurrence in *Marshel,* somewhat difficult to reconcile the holdings of these two cases, and particularly *Marshel,* with *Popkin.* Nevertheless, neither decision purported to overrule *Popkin,* and in fact, both asserted that it supports their holdings. The court in *Green* distinguished *Popkin* primarily on the ground that in the latter shareholder approval was required to effectuate the challenged merger. Therefore a requirement of full disclosure would presumably suffice to protect the interests of minority owners. In contrast, since the Delaware short-form merger under attack in *Green* did not require prior notification, lack of disclosure or misrepresentation was unnecessary to the claim. 533 F.2d at 1289–90. This distinction, however, is not entirely satisfactory, particularly since the merger in *Marshel* was one which required shareholder approval. If the distinction suggested in *Green* were dispositive, *Marshel* would have gone the other way.

Goldberg argues that the line between those cases governed by *Green* and *Marshel* on the one hand, in which no allegation of deception is required, and those governed by *Popkin* on the other, should be drawn between those cases in which the challenged transaction is attacked as inherently fraudulent and those in which it is not. In support of this interpretation he seizes on the passage in *Marshel* in which the court, contrasting the facts of *Popkin,* noted that in the earlier case, "The propriety of the merger itself was not challenged." 533 F.2d at 1282. Because he claims to be challenging the transaction between UGO and Maritimecor as a fraud on UGO's minority shareholders, he argues that he falls within the ambit of the *Marshel* holding. This, however, is unduly simplistic. It reduces the distinction between the cases to semantics, and renders *Popkin* and a long line of prior decisions virtually meaningless, subject to circumvention by any plaintiff with counsel sufficiently artful to word the complaint so as to avoid any reference to such things as an unfair exchange ratio and substitute phrases like "inherently fraudulent scheme." We think the *Marshel* court must have meant more than this. Indeed, this conclusion is supported by the court's statement elaborating on the contrast between the facts in *Popkin* and the facts before it, that, "In the present case the 'merger' itself constitutes a fraudulent scheme *because it represents an attempt by the majority stockholders to utilize corporate funds for strictly personal benefit."* 533 F.2d at 1282 (emphasis added). The reference here to "strictly personal benefit" seems peculiarly directed to the "going private" context, in which the gains sought by defendants are particularly and exclusively individual in nature.

 We conclude, along with the Court of Appeals for the Sixth Circuit, that *Green* and *Marshel* deal with a subject *sui generis* and "cannot be read apart from the milieu of 'going private' merger transactions." *Marsh v. Armada Corp.,* 533 F.2d 978, 985, *petition for cert. filed,* No. 76–5, 45 U.S. L.W. 3103 (July 6, 1976). There is something inherently suspect in the decision of a small group of individuals when, after cashing in on the "going public craze" they then move for their own financial advantage to eliminate public investors from participation in ownership, and do so with corporate funds. It suggests as analogy the car thief who makes the owner pay for the gas to drive the car away. In *Green* Judge Medina put it that:

> "When controlling shareholders of a publicly held corporation use corporate funds to force extinction of the minority shareholders' interest for the sole purpose of feeding the pocketbooks of the controlling shareholders, such conduct goes beyond mere negligent mismanagement and is properly cognizable as 'an act, practice, or course of business which operates or would operate as a fraud . . .'" 533 F.2d at 1290.

This sentiment appears throughout both opinions and must be considered to lie at

the heart of their holdings. Although the issue is not free of difficulty, nevertheless we conclude that the cases should be limited to their facts, and so long as *Popkin* remains good law the element of deception should be understood as a requirement of a 10b–5 claim with the sole exception of actions challenging a "going private" merger.[3]

■ Goldberg has indicated a desire to replead and allege deception of the minority shareholders in the event that the motion to dismiss is granted. While such a course is frequently appropriate, in the circumstances of this case we decline to permit it.

There have already been two complaints. (See notes 1 and 2) Both are prime examples of an attempt to fit the square peg of a state law claim into the round hole of a 10b–5 allegation. When the original complaint was dismissed for failure to post security or obtain the requisite support from other minority shareholders, Goldberg was made exquisitely aware of the need to limit this amended pleading to a federal claim, unless he could post security under state law, which he could not. Although he now contends that he could allege that the was deceived by the defendants with regard to the terms of the transaction with Maritimecor, he chose to frame the amended complaint in such a way as to exclude this element altogether. There is a limit to the time and energy a federal court should accord to marginal federal causes of action which are fully capable of being vindicated in state court. Presumably, if the element of deceit formed any significant aspect of Goldberg's claim, or was responsible for the alleged injury to UGO, Goldberg could have been expected to have plead such facts before the third go-round.

For the foregoing reasons, the motion to dismiss is granted.[4]

It is so ordered.

---

**3.** *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975), is not to the contrary. It is, of course, true, as reiterated in *Schlick,* that a 10b–5 complaint is not deficient merely because it alleges malfeasance which would also be grounds for suit under state law. 507 F.2d at 379–80. All of the cases cited in this portion of the *Schlick* opinion, however, involved an element of deception, as did *Schlick* itself.

**4.** Since this Memorandum was filed the Supreme Court reversed *Green,* squarely holding that deception is an indispensable element to a 10b–5 claim. *Sante Fe Industries, Inc. v. Green,* 429 U.S. 814, 97 S.Ct. 54, 50 L.Ed.2d 74, 1977. Although the decision renders the above analysis moot, it lends substantial support to the end result.