**In re SHELL OIL REFINERY.**

Civ. A. No. 88–1935.

United States District Court,
E.D. Louisiana.

March 23, 1989.

John J. Cummings, III, Cummings, Cummings & Dudenhefer, New Orleans, LA, for plaintiff.

Thomas J. Wyllie, Adams and Reese, New Orleans, LA, for defendant.

## ORDER AND REASONS

MENTZ, District Judge.

This litigation arising out of an explosion at the Shell Oil Refinery at Norco, Louisiana on May 5, 1988 was certified as a class action under Fed.R.Civ.P. 23(b)(3) on November 23, 1988. The "Notice of Class Action" was mailed to approximately 25,000 known possible class members, whose names and addresses were compiled primarily by claims adjusters for Shell and plaintiffs' counsel. "Class members" are "all persons or entities who were physically present or owned property within the Parishes of St. James, St. John the Baptist, St. Charles, Jefferson, or Orleans, on May 5, 1988, and who sustained injuries or damages as a result of the explosion at the Shell Oil Refinery in Norco, Louisiana." Notice of Class Action, Exhibit "A" to Rec. Doc. No. 349. The Notice was also published in newspapers and posted in the district courthouses for each of the five parishes comprising the geographical boundaries of the class. The period during which the class members could take action to be excluded from the class action terminated on January 2, 1989. Approximately 1,240 class members elected to opt-out.

The next step in the proceeding is to identify absent class members [1] and obtain information about their claims. The parties agree that a Notice of Claim form and a Proof of Claim form should be issued to the class members at this time, but they are diametrically opposed on the procedure for issuance, completion, and return of the forms. The main point of contention is whether the Plaintiffs' Legal Committee (PLC) may communicate with the class members about the forms. Central to this dispute is the nature of the relationship between the PLC and the class members. The nature of the relationship also bears on the issue of whether the defendants may negotiate individual settlement offers, another area of contention between the parties. The Court will address each of these issues herein.

## REPRESENTATION

■ The PLC has maintained throughout this litigation that it has an unrestricted at-

---

1. Absent class members are those who have nev-
er made an appearance in the class action.

torney-client relationship with all class members. Shell's position is that upon expiration of the opt-out period, the PLC represents the class members only on class wide liability issues, but not on compensatory damage claims until the Notice of Claim forms are returned and it can be ascertained who is advancing such claims.

It is appropriate to refer initially to the Notice of Class Action as it explains, *inter alia*, the nature of the action, the effect of withdrawing from it, and the rights and obligations of those who remain class members. Shell and the PLC jointly prepared the notice, and they are bound by the recitals thereof.

The notice explained that prior to the expiration of the opt-out period, class members had the option of excluding themselves from the class and pursuing any claims independent of the class action. The notice provided that "[i]f you remain in the class action (by taking no action to be excluded from it), ... [y]our interests will be protected by the attorneys representing the class, but you may, if you wish, select your own attorney to represent you." Notice of Class Action, Exhibit "A" to Rec.Doc. No. 349. In explaining the nature of the class action, the notice referred to personal injuries, property damage, and punitive damage sustained by all persons, including Shell employees, within a five parish area. The notice makes no distinction between liability and compensatory damage claims.

The above-quoted section regarding representation was properly included in the notice. Due process concerns require that, upon expiration of the exclusion or opt-out period, all class members be represented on all claims included in the class action. When the opt-out period expired on January 2, 1989, the number and names of class members who opted-out of the action were fixed and ascertainable, while the same information about class members who did not take action to be excluded remains indefinite. However, the fact that an unknown number of absent class

members remain unidentified until the Notice of Claim forms are returned does not mean that they are unrepresented.

■ All class members who did not opt-out became subject to any rulings, orders, and judgments of the Court. Thus, as of January 3, 1989, all class members, whether actual or absent, have due process rights to have their interests adequately represented. *See Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940).

> [C]lass action counsel possess, in a very real sense, fiduciary obligations to those not before the Court. . . .
>
> Not the least important of the fiduciary duties shared by counsel and the court is their duty to ensure that absentee class members have knowledge of proceedings in which a final judgment may directly affect their interests.

*Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 (3d Cir.1973).

■ Under Fed.R.Civ.P. 23(b)(3), class members have the right to retain individual counsel. Class members who do not retain individual counsel are entitled to rely on the representation of class counsel. To find that the PLC does not represent the absent class members until return of the Notice of Claim forms would not only be inconsistent with the Notice of Class Action, but would give class members who have retained individual counsel an advantage. All class members, whether actual or absent, are entitled to the same safeguards and due process considerations. *See* Newberg, *Orders in the Conduct of Class Actions: A Consideration of Subdivision (d)*, 10 B.C.Ind. & Com.L.R. 577, 588 (1969). Therefore, the Court finds that since the exclusion or opt-out period expired on January 2, 1989, an attorney-client relationship exists between the PLC and all class members.[2] *See* Newberg, *Class Actions*, Vol. 2, § 2730(d), at 1220 (1977). Of course, insofar as absent class members, the attorney-client relationship is constructive.

---

**2.** The nature of the relationship between the PLC and the class members after class certification but prior to expiration of the exclusion period is not before the Court. The Court's opinion should not be interpreted as finding that the

interests of the class members were unrepresented prior to January 3, 1989. Without question, the PLC has undertaken to act as a fiduciary to the class members since the date of certification of the class.

*NOTICE AND PROOF OF CLAIM*

The Notice of Class Action provides that: [I]n order to obtain any recovery you will first be required to supply such proof of your damages as the Court may direct....

. . . . .

If you remain a member of the class action (by not choosing to be excluded from it), you will be called upon in due course to provide detailed information concerning your claim. Your failure to provide this information in the manner required by the Court may result in your claim being disallowed. If you do not exclude yourself from the class action, you will be sent appropriate notices with regard to filing your claim. *The services of the Plaintiffs' Legal Committee will be available to assist you in preparing and filing your proof of claim.* (Emphasis added).

Notice of Class Action, Exhibit "A" to Rec. Doc. No. 349.

■ Shell and the PLC have submitted proposals regarding the notice and proof of claim period. Both parties suggest a two-step process involving: 1) notice and a Notice of Claim form; and 2) a Proof of Claim form. First, notice of the notice of claim period must be mailed to the known claimants and published in the same manner as the Notice of Class Action. The parties agree, in essence, on the wording of the notice and that a brief Notice of Claim form should accompany the notice. The purpose of the Notice of Claim form is to establish exactly who is making a claim and the general nature of the claim(s). The parties further agree that the Notice of Claim form should be postmarked not later than May 5, 1989,[3] and that failure to timely return a Notice of Claim form will bar a class member from bringing a claim in this or any other court. Second, a detailed Proof of Claim form must later be provided to everyone who timely submitted a Notice of Claim form.

■ The PLC is prepared to issue the Notice of Claim form and assist the class members in completing the form in accordance with the Notice of Class Action. Shell has expressed concern about the potential for solicitation of claims during this period. Pursuant to Rule 2.12(e) of the Local Rules for the Eastern District of Louisiana[4], which describes the prerequisites for obtaining an order prohibiting communication with class members, Shell moved for an evidentiary hearing regarding abuses it fears will result from communication with the class members, particularly solicitation of claims. Shell sought an order prohibiting *all attorneys*, except for individually retained counsel, from communicating, either directly or indirectly, with class members until after the Notice of

---

**3.** The selection of May 5, 1989, the anniversary date of the explosion, as the date by which all Notice of Claim forms must be postmarked, was discretionary and unrelated to any concerns about prescription. The filing of the class complaint tolls the statute of limitations for the class. *See American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 555, 94 S.Ct. 756, 767, 38 L.Ed.2d 713 (1974).

**4.** Local Rule 2.12(e) was drafted in accordance with the standards set forth in *Gulf Oil Company v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) and provides:

(1) In every potential and actual class action under Rule 23 of the F.R.Civ.P., whenever a party or his counsel desires to prohibit another *party or his counsel* from directly or indirectly, orally or in writing, communicating concerning such action with any potential or actual class member not a formal party to the action, he shall apply in writing to the Court for such an order. In such application the parties must set forth with particularity the particular abuses they fear will result from such communication along with the form of remedy they believe would be appropriate to prevent frustration of the policies of Rule 23.

(2) The Court will not enter an order prohibiting communication with members of the class in the absence of a clear record (and when necessary, an evidentiary hearing) reflecting: (i) specific findings regarding the abuse the Court seeks to prevent; (ii) the need for such an order after weighing the abuse sought to be corrected with the effect it will have on the right of a party to proceed pursuant to Rule 23 without interference. Further, any order entered shall be tailored to provide limitations on communications to the *minimal* extent necessary to prevent the abuse it seeks to prevent.

(3) Any attorney who communicates with the class shall preserve and retain in his files, until the final conclusion of the action, a copy of all communications which he has sent to any members of the class and/or potential class. (Emphasis added).

Claim period expires on May 5, 1989. Shell proposed that issuance and preparation of the notice and Notice of Claim form be handled by a neutral party, such as the Court's Special Master, who was previously appointed to handle other unrelated matters in this litigation. Shell also sought an order limiting communication with class members after May 5, 1989 to the PLC and individually retained counsel.

The Court granted Shell's request for a hearing. On March 13, 1989, the Court heard five hours of testimony, which focused on allegations of solicitation of clients by two specific attorneys, who shall be referred to herein as Attorney A and Attorney B.[5] Both Attorney A and Attorney B were represented by separate counsel at the hearing. Attorney A is one of the nine members of the PLC;[6] Attorney B is not a member of the PLC.

As to Attorney A, the Court specifically finds the following:

1. On the morning of the explosion, May 5, 1988, Attorney A filed a thirty billion dollar class action in Civil District Court for the Parish of St. Charles. The typed petition is captioned in handwriting, *Troy Watson, et al. v. Shell Oil Company,* No. 33,619–C. (The suit was subsequently removed to this federal court.)

2. At approximately 1:00 p.m. on the day of the explosion, Attorney A stopped his car to speak with Bridgette Alexander and her mother, Lorita Jenkins. He asked if they could "direct him to the black neighborhood" in Norco, Louisiana. Lorita Jenkins explained that she lived in the black neighborhood and would direct Attorney A to her home. Although Attorney A did not mention it, Lorita Jenkins and Bridgette Alexander knew that he had filed a suit that morning, having seen it discussed on TV.

3. After they arrived at Lorita Jenkins' home, Ms. Jenkins agreed to "sign up" clients for Attorney A for a fee of five dollars per client. She also agreed that Attorney A could use her home to meet with some of his clients and he compensated her for that.

4. Dorothy Jenkins, Lorita Jenkins' sister, met Attorney A on the day of the explosion in front of Lorita Jenkins' home. She also agreed to let Attorney A use her home as a headquarters and his clients use her telephone to contact him. Attorney A did not hire Dorothy Jenkins to obtain clients for him and she never received any compensa-

---

**5.** The names of Attorney A and Attorney B shall be made an addendum to this opinion and placed under seal. It is important that the attorneys in question remain anonymous in this published opinion (their names are, of course, known to the parties) because a Rule 2.12(e) hearing is not a disciplinary proceeding. The purpose of a Rule 2.12(e) hearing is to allow a party to offer evidence that there is a *potential for abuse* of communication with the class members sufficient to justify an order limiting communication. Indeed, Shell emphasized at the hearing that it was not seeking sanctions or a contempt order, and did not view the proceedings as disciplinary in nature. Thus, any findings of the Court regarding the potential for abuse, while necessarily based on evidence of past conduct, are not intended to be an adjudication of whether ethical standards have been violated. *See Dondi Properties Corporation v. Commerce Savings and Loan Association,* 121 F.R.D. 284, 290 (N.D.Tex.1988) ("Except in those instances in which an attorney's conduct prejudicially affects the interests of a party opponent or impairs the administration of justice, adjudication of alleged ethical violations is more appropriately left to grievance committees constituted for such purpose.")

The evidence which was presented at the hearing is substantially the same as that which was previously submitted to the Court by various members of the community and subsequently delivered by the Judge to an investigation committee of this Court, appointed by Chief Judge Heebe under Rule 5 of the Rules of Disciplinary Enforcement of the Eastern District of Louisiana. The committee has already filed a report recommending that disciplinary action be instituted against three attorneys, including Attorney A and Attorney B. The court must assume that the disciplinary proceedings will move forward in a proper manner.

**6.** In view of the disciplinary proceedings pending against Attorney A, together with the comments of Judge Robert Collins in another class action suit, filed by Attorney A, wherein the Judge seriously questioned Attorney A's ability to represent his clients in that case, and the evidence of Attorney A's conduct presented at the 2.12(e) hearing in this case, the Court has issued a Rule to Show Cause why Attorney A should not be removed from the PLC. The Court undertook this action *sua sponte* based on its continuing obligation to assure the adequate representation of the class.

tion for anything, except $270 for the use of her home and phone.

5. At different times subsequent to meeting Attorney A, Lorita Jenkins, Bridgette Alexander and Dorothy Jenkins agreed to have Attorney A represent them in the Shell Oil Refinery litigation.[7] All three deny that he solicited their business.

6. Attorney A gave Lorita Jenkins copies of a flyer which purported to be from "Ms. Dorothy Jenkins and Lority (sic) Jenkins." The single page, typed flyer is captioned "THE SHELL OIL EXPLOSION IN NORCO, LOUISIANA (5–5–88)" and states, *inter alia,*:

> WE HAVE ORGANIZED A COMMUNITY EFFORT TO BE SURE THAT SHELL OIL AND OTHERS ARE HELD RESPONSIBLE FOR ALL THE EMOTIONAL, PHYSICAL, PSYCHOLOGICAL DAMAGES, HOME AND PROPERTY DAMAGES THAT HAVE OCCURRED.
>
> WE WILL MEET AT _____ FOR MORE INFORMATION AS TO WHAT YOU SHOULD DO. COME TO THIS MEETING AND PROTECT YOUR INTEREST.

The flyer also states that persons may contact Attorney A, as well as Lorita and Dorothy Jenkins. The flyer provides the office address and two telephone numbers for Attorney A, and the telephone numbers for the Jenkins.

7. Marguerite Pierre found one of these flyers in her mailbox. In handwriting at the bottom of Mrs. Pierre's flyer is the notation "Sign up today" and the addresses and phone numbers of Dorothy and Lorita Jenkins.

8. Based on the deposition testimony of Robert G. Foley, a handwriting expert, the Court finds that the handwritten caption of Attorney A's class action petition and the handwritten notation at the bottom of the flyer found in Mrs. Pierre's mailbox were made by the same person.

9. The handwriting on the caption of the *Troy Watson* petition does not belong to Lorita Jenkins, Dorothy Jenkins or Bridgette Alexander inasmuch as the petition was filed before they met Attorney A and they have denied authorship of the handwriting. There is no evidence that there was anyone working for Attorney A at the time the petition was filed who could have made the handwritten caption.

10. There is no evidence that Lorita Jenkins, Dorothy Jenkins, or Bridgette Alexander made the handwritten notation on the bottom of Mrs. Pierre's flyer.

11. The Court finds that Attorney A wrote the caption on the *Troy Watson* petition he filed in Civil District Court for the Parish of St. Charles. Considering that the handwritten notation on Mrs. Pierre's flyer is the same as on the *Troy Watson* petition, the Court finds that Attorney A also wrote the handwritten notation on Mrs. Pierre's flyer.

12. Lorita Jenkins testified that the flyer was a letter to Attorney A's clients, but that she did not mail the flyer or hand it out to anyone, and that Attorney A did not ask her to do such. However, Attorney A held two meetings which were open to the general public. At these meetings, Lorita Jenkins put the flyers on a table. In addition, she did try to obtain clients for Attorney A by talking with her friends and relatives. She made a list of these people and gave it to Attorney A.

13. Dorothy Jenkins did not see the flyer until one week after the explosion when Lorita Jenkins gave her about ten to twenty copies. She did not receive any instructions about what to do with the flyers, but she understood that she was to give the flyers to "clients" who came to her home. She actually gave the flyers to three people, whose names she could not recall. However, she never handed the flyers out at the meetings held by Attorney A, and she never saw anyone else hand out the flyers.

14. Attorney A hired Bridgette Alexander to work in his office. He had the names

7. Lorita Jenkins and Bridgette Alexander have since discharged Attorney A and retained another attorney.

of his clients written down and asked her to telephone them to keep them in touch with what was going on in the Shell Oil Refinery litigation. Bridgette Alexander did not type the flyer; she saw it for the first time on a table at one of the public meetings held by Attorney A. She did not see anyone hand out the flyers.

15. Attorney A signed a letter dated October 26, 1988 which is addressed "TO: ALL CLIENTS OF [ATTORNEY A] SUSTAINING DAMAGES AS A RESULT OF THE SHELL OIL EXPLOSION OF MAAY (sic) 5, 1988 IN NORCO, LOUISIANA." The letter provides as follows:

> TO BRING YOU UP TO DATE ON THIS MATTER, WE ARE CONTINUING OUR INVESTIGATION OF SHELL OIL COMPANY. WE ARE FINDING OUT MUCH DAMAGING INFORMATION ABOUT THE CAUSE OF THE EXPLOSION.
>
> IT HAS COME TO THE ATTENTION OF THE PLAINTIFF ATTORNEYS THAT SHELL OIL IS SETTLING CASES FOR "LITTLE OR NOTHING." DON'T SETTLE FOR THIS LITTLE MONEY. SHELL OIL COMPANY HAS MUCH MONEY TO SPEND. WE ARE GOING TO GET A LARGE CHUNK OF THIS MONEY FOR OUR CLIENTS. YOUR RECOVERY IS EXPECTED TO BE LARGE. SHELL KNOWS THIS. SHELL IS PAYING THE LEAST AMOUNT OF MONEY IT CAN.
>
> DO NOT ACCEPT ANY SETTLEMENT MONEY FROM SHELL OTHER THAN FOR PROPERTY DAMAGE.
>
> SHELL OIL COMPANY IS BEING DEFEATED TIME AND AGAIN IN FEDERAL COURT. WE HAVE SHELL OIL ON THE RUN. THEY ARE RUNNING SCAARED (sic). THE CERTIFICATION OF CLASS ACTION HAS BEEN GRANTED BY THE FEDERAL COURTS. WE HAVE BEEN EXAMINING DOCUMENTS AT SHELL OIL. EXPERTS HAVE MADE FINDINGS FROM THIS EVIDENCE. DON'T SELL OUT TO SHELL OIL.
>
> YOU WILL BE SMILING WHEN SETTLEMENT TIME COMES WITH THESE LARGE CHECKS YOUR ATTORNEY WILL HAND YOU WHEN THE CASE IS OVER. I WILL BE HOLDING A MEETING SOON TO DISCUSS THIS MATTER WITH YOU. I LOOK FORWARD TO SEEING YOU SOON.
>
> JUST REMEMBER I'M WORKING HARD FOR YOUR BIG SETTLEMENT CHECK. TRUST ME THE CASE IS GOING YOUR WAY. YOU ARE LOOKING GOOD TOWARD A BIG, VERY BIG CHECK IF YOU HOLD OUT TO THE END.
>
> HANG TOUGH AND DON'T SETTLE WITH SHELL OIL.
>
> *PAYDAY IS COMING. PAYDAY IS COMMING. PAYDAY IS COMMING. YOUR BIG CHECK IS COMMING. YOUR BIG CHECK IS COMMING.* (Sic) *JUST WAIT A LITTLE LONGER FOR YOUR ATTORNEYS TO PUSH A LITTLE HARDER AND A LITTLE BIT LONGER.*

16. There is no evidence that Attorney A sent the letter of October 26, 1988 to anyone except his clients.[8]

17. Separate from his duties as a member of the PLC, Attorney A currently represents 274 clients in this class action. Of his 274 clients, 42 are the subject of dispute with other attorneys who also claim to represent them.

As to Attorney B, the Court specifically finds as follows:

1. Three days after the explosion, a man working for Attorney B's law firm went to the home of Claude Pierre. Neither Mr. Pierre nor his wife contacted any attorneys after the explosion to seek their services. The man gave Mr. Pierre the law firm's brochure and left him an unexecuted employment contract for a 40% contingency fee. Mr. Pierre was not contacted again by Attorney B's law firm.

2. At approximately noon on the day of the explosion, Margaret Kern, an attorney

8. Attorney A made no objection to the introduction of the letter of October 26, 1988.

whose mother lives in the Norco area, observed what she believed to be a "runner" for Attorney B, speaking with residents of the neighborhood, offering his advice not to rush into settlement, and handing out his card. She told the man not to come to her mother's house and, in fact, no attorney or representative of an attorney contacted her mother personally.

3. Mr. and Mrs. Donald Loupe received in the mail a copy of a petition including the Loupe family as plaintiffs. The petition was filed by Attorney B. Mr. and Mrs. Loupe deny authorizing Attorney B to file the petition on their behalf.

4. Mr. and Mrs. Loupe wrote a letter to the Louisiana Bar Association which was prepared for them by another attorney. The letter describes various acts of solicitation by Attorney B and other attorneys, including Attorney A. The Loupes subsequently submitted an affidavit to the Louisiana Bar Association recanting most of the allegations contained in their letter as misinformation about matters of which they did not have first hand knowledge. However, they still maintain that they did not authorize Attorney B to file a suit on their behalf.

5. Prior to the filing of the Loupes' petition, Attorney B was contacted by the Loupes with regard to possibly having him represent them on their claim against Shell. Attorney B told Mr. Loupe that he would add the Loupes to his list of clients, but Mr. Loupe does not recall whether he told Attorney B not to list them.

6. Attorney B currently represents 6,900 clients in this class action. Forty-four of Attorney B's clients are the subject of dispute with other attorneys who claim to represent them.

Shell also presented evidence of solicitation of legal representation by certain unidentified attorneys and/or their agents. On this evidence, the Court specifically finds as follows:

1. A day or two after the explosion, Dorothy Mae Prater was visited on separate occasions by three attorneys. At no time did she request an attorney to come to her home. Each attorney asked her whether she wanted to be represented. Two left their cards with her.

2. The day after the explosion, an attorney from LaPlace, Louisiana approached Junior Levy Prater. The attorney wanted Mr. Prater to hire him and told him that Shell wouldn't settle with him. Mr. Prater told the man to get off his property.

3. Dorothy Jenkins was contacted "repeatedly" after the explosion by people claiming to be attorneys and others claiming to be representatives of attorneys.

4. The complaints from the public about solicitation were such that the Twenty–Ninth Judicial District Bar Association for the Parish of St. Charles issued a public notice condemning solicitation and urged persons who believe that they were solicited to file a formal complaint with the Committee on Professional Responsibility.

The evidence adduced at the hearing shows, as to both Attorney A and Attorney B, a potential for "drumming up" participation in the class action, by the filing of uninvestigated claims and solicitation of legal representation. This is one of the potential abuses associated with communication to class members. *See Gulf Oil,* 452 U.S. at 121, n. 12, 101 S.Ct. at 2220, n. 12 (quoting *Waldo v. Lakeshore Estates, Inc.,* 433 F.Supp. 782, 790 (E.D.La.1977)). The sheer number of Attorney A's and Attorney B's clients suggests that the incidents of solicitation offered at the hearing were not isolated. Similarly, there is ample evidence of widespread solicitation of representation by numerous unidentified attorneys. Many of the witnesses expressed frustration and anger about being solicited, much the same as people who are harassed by door-to-door and telephone salesmen. The record shows a clear need for controls on communication with the class members. The Court may enter an order limiting communication if the need for such an order outweighs any potential interference with the rights of the parties. *Gulf Oil,* 452 U.S. at 121, 101 S.Ct. at 2220; Local Rule 2.12(e)(2).

The Court recognizes that "Rule 23 expresses 'a policy in favor of having litigation in which common interests, or common ques-

tions of law or fact prevail, disposed of where feasible in a single lawsuit". *See Gulf Oil,* 452 U.S. at 98, n. 11, 101 S.Ct. at 2199, n. 11 (quoting *Rodgers v. United States Steel Corp.,* 508 F.2d 152, 163 (3d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975)). This class action is now at the stage where class members must come forward and present their claims or face the penalty of dismissal. Class members need to be able to make informed decisions about their continued participation in the litigation. First hand experience during the opt-out period has shown that the class members will need assistance in preparing the Notice of Claim and Proof of Claim forms. The Notice of Claim form is analogous to a complaint, and the Proof of Claim form may be likened to a particularization of the complaint. The preparation of these forms is part of the adversarial process. Certainly, the Special Master should not assist the class members in preparing the forms as her participation might create a conflict of interest. Having found that the PLC is the legal representative of the class members, it is the PLC's obligation to protect the interests of the entire class, regardless of whether the class member retained individual counsel or has never made an appearance in the action. *See* Newberg, *Class Actions, supra,* § 2705(a) at 1174 and § 2730(d) at 1220, n. 257. For this reason, it is important that the PLC be able to communicate with the class, particularly to clarify the proceedings during the notice and proof of claim period.

> If the court has established cutoff dates for filing statements of claims or of intention to assert claims by class members who have not excluded themselves, there may exist numerous absent class members in a large class who never received or who misunderstood the earlier notice, or who were relying on counsel for the class representative to protect their interests. The attorney for the class representative

should not easily allow the rights of absent class members to be unnecessarily compromised and dismissed from the proceedings. In these and similar circumstances, the court should consider permitting counsel to initiate communications with members who have not responded. To prevent communication of this kind, after the time for opting out has passed, might well convert the class action into a "trap" for the unwary, and raise serious First Amendment questions. (Footnotes omitted).

*Id.* § 2730 at 1212.

Moreover, the record is devoid of any facts indicating abuse or the potential for abuse attributable to the members of the PLC, except for Attorney A. Indeed, Shell admitted prior to the hearing that it had no such evidence. Thus, as to the PLC (excluding Attorney A), any concern about potential for drumming up participation in the class is unfounded. To the extent that abuses by Attorney A and unidentified attorneys might cast a shadow on the PLC, any such assumption is overcome by the importance of unlimited communications between the PLC and the class.

An order allowing only the PLC (excluding Attorney A) and individually retained counsel to initiate contact with the class members will not impinge on, but in fact will serve, the class members' interests. This is not a case where the solicitation of legal representation was for non-pecuniary or public interests. The class is composed of mainly unsophisticated and unmoneyed people, who are susceptible to pressure from unscrupulous lawyers seeking as many 40% contingency fee contracts as possible. Because the PLC represents the interests of the class members, individual representation is, in most cases, unnecessary and will serve only to reduce a claimant's recovery to the benefit of the individual attorney.[9] Of course, class members are free to retain individual counsel. They

9. The Court does not expect that the members of the PLC will attempt to obtain contingency fee agreements with the absent class members. However, the Court refers all counsel to the case of *Kiser v. Miller,* 364 F.Supp. 1311, 1319 (D.D.C.1973), *aff'd on cited proposition, rev'd on other grounds,* 517 F.2d 1237 (D.D.C.1974). In *Kiser,* the court refused to enforce class counsel's contingency fee agreements with the class members where the contract was executed after the attorney-client relationship had commenced. The contracts were held unconscionable and void as against public policy. For similar reasons, the court refused to enforce the intervenor's fee contracts, noting that intervenor's counsel's efforts duplicated class counsel's efforts.

may do so by initiating communication with an attorney, who is then entitled to respond to inquiries about representation and legal rights in accordance with the Louisiana Rules of Professional Conduct. If a class member retains individual counsel, his interests will be represented by both the PLC and the individual counsel.

■ In conclusion, the Court finds that it is necessary to enter an order precluding all counsel,[10] except the PLC (excluding Attorney A), from initiating communication with the class members, other than their own clients. Such an order is tailored to impose the minimum limitation necessary, does not unduly interfere with the rights of the parties, and promotes the best interests of the class members.

*INDIVIDUAL SETTLEMENT*

Plaintiffs argue that since the opt-out period expired, no individual settlements can be made without irreparable harm to the class action. Plaintiffs explained that if a class member did not take action to be excluded from the class, he gave up any right he might have had to negotiate and conclude his own settlement. This result is necessary, plaintiffs argue, in order to ensure the integrity of the class action and that all members will be treated fairly. Plaintiffs also argue that the PLC does not have a duty to communicate individual settlement offers to class members.

■ Again, the Court refers to the Notice of Class Action which the parties jointly prepared. The Notice states that "[i]f you remain in the class action (by taking no action to be excluded from it), ... you may ... negotiate an independent settlement subject to court approval and payment of attorney fees and litigation costs as ordered by the court." Notice of Class Action, Exhibit "A" to Rec.Doc. No. 349. Thus, the Notice of Class Action establishes that independent settlements may be negotiated subsequent to the opt-out period.

■ In addition, it appears that plaintiffs' position is unsupported by any legal authority. Indeed, several courts have recognized that individual settlements are permissible in a class action. *See In re General Motors Corporation Engine Interchange Litigation,* 594 F.2d 1106, 1137–1140 (7th Cir. 1979); *Vernon J. Rockler & Co., Inc. v. Minneapolis Shareholders Company,* 425 F.Supp. 145, 149–50 (D.Minn.1977); *Chrapliwy v. Uniroyal, Inc.,* 71 F.R.D. 461, 464 (N.D.Ind.1976); *Rodgers v. United States Steel Corporation,* 70 F.R.D. 639, 642–43 (W.D.Pa.1976). Class members are free to accept or reject individual settlement offers. Plaintiffs' argument that individual settlements are impermissible because they might destroy the class action is without merit. As stated in *Vernon J. Rockler & Co.,* 425 F.Supp. at 150:

The only limitation under the cited rules which has been placed on a defendant's freedom to settle [with individual class members] is that the settlement cannot "affect" the rights of non-settling class members. Although this term, standing alone, sweeps broadly, it must be considered in context. In *Weight Watchers,* the court stated that individual settlements were permissible even if the cumulative result of the settlements was that a class action was no longer maintainable due to an insufficient number of remaining class members. Undoubtedly, this result affects the rights of non-settlers. However, the court stated that such a result would not violate Rule 23(e). When the other portions of the opinion are perused, it becomes clear that an improper effect only occurs when the settlements impinge on the substance of plaintiffs' complaint. Here, no such result will occur since Jacobs is only attempting to diminish the population of the class. Even if he succeeds in gaining control of the Company, non-settling class members will still have their individual claims, and if enough re-

10. Shell's request for an order limiting communication with class members included all attorneys whether before this Court or not. The Court has no jurisdiction to issue orders to attorneys who have never appeared in this action and

who have not undertaken individual representation of any class member. The provisions of Rule 2.12(e) are specifically limited to orders prohibiting communication by a "party or his counsel."

fuse to settle, a class claim. (Citations omitted).

Thus, individual settlements which diminish or destroy a class action are not necessarily improper, unless they impinge on the substance of the non-settling plaintiffs' individual claims. There is no allegation or evidence in this case that individual settlements will affect the non-settling plaintiffs' rights to recover. However, considering that the majority of claims in this case are small, there is a practical matter of financial concern that "[a]llowing a defendant to engage in piecemeal settlements with class members may undermine the ability of small claimants to obtain a recovery should it become uneconomical to continue prosecuting the remaining claims." Newberg, *Class Actions, supra,* § 2810 at 1253. Nevertheless, in this several thousand member class action, such a threat is not serious, at least at this point in time. As explained below, the Court intends to supervise the settlement process and continue to act in the best interests of the class members. Therefore, upon conclusion of the notice of claim period and until otherwise ordered by the Court, the defendants may negotiate individual settlements with the class members.

Defense counsel have an ethical obligation to make any offers of individual settlement to the PLC, as well as any additional counsel that might have been retained by the class member. *See* Rule 4.2 of the Rules of Professional Conduct of the Louisiana State Bar Association.[11] . Likewise, the PLC has an ethical obligation to communicate an individual settlement offer to the class member. *See* Rule 1.4 of the Rules of Professional Conduct of the Louisiana State Bar Association.[12]

 Under Rule 23(e), a class action may not be dismissed without court approval.

However, the language of Rule 23(e) is limited to settlement of the class action itself, as opposed to settlements with individual class members. "[A] proposed offer to settle with individual class members requires a lesser degree of judicial scrutiny than a proposed settlement of a class action." *In re General Motors,* 594 F.2d at 1139. The court's concern in reviewing an individual settlement is not to see that the settlement is fair, but that the offer "provided data sufficient to enable each shareholder to make an informed choice to settle or proceed." *Vernon J. Rockler & Co.,* 425 F.Supp. at 150; *see In re General Motors,* 594 F.2d at 1139–40. "[A]n offer to settle should contain sufficient information to enable a class member to determine (1) whether to accept the offer to settle, (2) the effects of settling, and (3) the available avenues for pursuing his claim if he does not settle." *In re General Motors,* 594 F.2d at 1139. The procedure and documents necessary for judicial review of any individual settlements is set forth below in the Court's Order.

In accordance with the foregoing opinion,

IT IS ORDERED that:

## I. *Representation*

A. The PLC has an attorney-client relationship with all class members, whether actual or absent, on all claims included in this class action.

## II. *Notice, Notice of Claim form, and Proof of Claim form:*

A. The PLC shall issue the notice attached as Exhibit "A" and the Notice of Claim form attached as Exhibit "B" to this opinion to all persons and/or entities reason-

---

**11.** Rule 4.2 provides that:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. A lawyer shall not effect the prohibited communication through a third person, including the lawyer's client.

**12.** Rule 1.4 provides that:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so.

ably believed to be class members in the following manner:

1. Publication on at least one occasion in the official journals and twice in one other newspaper of general circulation covering the parishes comprising the geographical boundaries of the class as defined in the definition of class and in the approved notice.

2. Posting by the Clerk of Court at the district courthouses in each parish comprising the geographical boundaries of the class as defined.

3. First class mail to all class members whose names and addresses are known or made available to the PLC and to the defendants, and who are reasonably believed to have claims cognizable in this class action.

B. All steps necessary to issue the notice shall be taken not later than March 31, 1989.

C. The Court finds that the notice attached as Exhibit "A" to this opinion, fully comports with the requirements of Fed. R.Civ.P. 23 and due process. The Court further finds that the procedure for dissemination of the notice fully complies with Rule 23 and due process and constitutes the best notice practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort.

D. The Notice of Claim form, attached as Exhibit "B" to this opinion, shall be made returnable to the Court's Special Master, Nita Gorrell, P.O. Box 1537, Hammond, Louisiana 70404, who shall tabulate the returns.

E. The Special Master shall make the returned Notice of Claim forms available for inspection by any party every Monday. Within four weeks after conclusion of the Notice of Claim period, the Special Master shall submit to the parties and the Court a complete list of all persons who timely returned apparently valid Notice of Claim forms. The list shall state the persons full name, address, and birth date, and, where applicable, social security number, relation to head of household, and whether the person is a minor. The Special Master shall also compile a list of all persons who claim all possible types of damages and a list of all persons who claim less than all possible types of damages, segregated according to the types of damages claimed.

F. The members of the PLC, except Attorney A, may assist the class members in preparing the Notice of Claim forms. This must be done on an individual or household basis, as opposed to group meetings. The members of the PLC, except Attorney A, may initiate contact with or respond to inquiries by the class members.

G. Individually retained counsel, including Attorneys A and B, may assist their clients in preparing the Notice of Claim forms. This must be done on an individual or household basis, as opposed to group meetings. Individually retained counsel, including Attorneys A and B may initiate contact with or respond to inquiries from their clients.

H. No attorney shall initiate communication with a class member, unless he is a member of the PLC (excluding Attorney A) or was individually retained to represent the class member. This order does not apply to attorneys who have never appeared in this action or who have not undertaken individual representation of any class member.

I. At the conclusion of the notice of claim period, the Court will address the format of the Proof of Claim form.

III. *Individual Settlement*

A. Upon conclusion of the notice of claim period and thereafter, until otherwise ordered by the Court, the defendants may negotiate individual settlements with the class members.

B. All communications regarding individual settlement must be in writing.

C. If a class member has retained individual counsel, the defense must first present the written offer to that attorney who shall then consult with the PLC as to further negotiations or settlement. Any difference between the PLC and the individual attorney should be presented to the Court for resolution.

D. As to each individual settlement entered into, the defense shall submit to the Court within two weeks after the settlement,

all documents reflecting the settlement negotiations and all properly executed settlement documents together with a statement that 12½ percent of the gross amount of the settlement proceeds have been deducted and deposited into the PLC Fee and Cost Funds, as previously directed by the Court.

E. As to each individual settlement entered into, the attorney(s) advising the class member about the settlement shall submit to the Court within two weeks after the settlement, the following documents:

a. All claims information forming the basis for each settlement; .

b. Evidence that the class member has been fully informed as to the claims he could present and all the information he has to support his claim;

c. Where a class member is represented by an individual attorney, an affidavit by that attorney that, in his opinion, the settlement is reasonable and that his client knowingly and freely entered into the settlement;

d. Where a class member is represented solely by the PLC, an affidavit from the PLC member, who counselled the class member about the settlement, that the settlement is, in his opinion, reasonable and that the class member knowingly and freely entered into the settlement;

e. An executed, sworn, and informed consent by the class member to dismissal with prejudice of his class action claim.

F. Upon receipt of all settlement documents, the court will review the documents and determine whether an evidentiary hearing is necessary.

G. Where the parties have entered into an individual settlement on only property damages, all settlement documents described above shall be submitted to the Special Master within two weeks of settlement. The Special Master shall, as to each settlement, conduct an evidentiary hearing, if necessary, and submit proposed findings and recommendations to the Court within sixty days of settlement.

H. A settling class member or his individual attorney shall have until ten days after the settlement documents are submitted to the Court for approval to object to the 12½ percent fee and cost assessment. If a timely objection is made, then the Court shall conduct a hearing wherein the PLC shall have the burden of showing their entitlement to fees and costs. If no timely objection is made, then a fee and cost assessment hearing will not be necessary.

I. The Court may combine a fee and cost assessment hearing with a hearing for approval of a settlement.

EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In re: Shell Oil Refinery.

Civil Action

Number: 88–1935

Section: "I" (6)

Ref: All Cases

*IMPORTANT NOTICE TO ALL
CLASS MEMBERS*

TO: ALL PERSONS OR ENTITIES WHO WERE PHYSICALLY PRESENT OR OWNED PROPERTY WITHIN THE PARISHES OF ST. JAMES, ST. JOHN THE BAPTIST, ST. CHARLES, JEFFERSON OR ORLEANS, ON MAY 5, 1988, *AND* WHO SUSTAINED INJURIES OR DAMAGES AS A RESULT OF THE EXPLOSION AT THE SHELL OIL REFINERY IN NORCO, LOUISIANA

*PLEASE READ THIS NOTICE
CAREFULLY.*

*IT WILL AFFECT YOUR RIGHTS
IF YOU ARE A PERSON
OR ENTITY WHO FITS THE
DESCRIPTION ABOVE.*

The next step in this class action litigation is to gather preliminary information concerning your injuries and/or damages, if any.

Pursuant to Court Order, any person or entity intending to pursue a claim in this class action must fill out and sign a "Notice of Claim" form in a timely fashion.

"Notice of Claim" forms must be mailed to the address shown below by first class mail and must be *postmarked* no later than May 5, 1989.

FAILURE TO TIMELY FILE A PROPERLY FILLED OUT AND SIGNED "NOTICE OF CLAIM" FORM WILL RESULT IN YOUR CLAIM BEING DISALLOWED. IF YOU HAVE NOT PREVIOUSLY FILED AN "ELECTION TO BE EXCLUDED FROM CLASS ACTION" FORM, THIS CLASS ACTION REPRESENTS YOUR ONLY OPPORTUNITY TO MAKE A CLAIM, AND FAILURE TO TIMELY FILE THE "NOTICE OF CLAIM" FORM WILL RESULT IN FORFEITURE OF YOUR RIGHTS AND DISMISSAL OF YOUR CLAIM BY THE COURT. THIS MEANS THAT IF YOU DO NOT RETURN A PROPERLY FILLED OUT AND SIGNED "NOTICE OF CLAIM" FORM, POSTMARKED NO LATER THAN MAY 5, 1989, YOUR CLAIM WILL BE FOREVER BARRED AND CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT.

One "Notice of Claim" form should be completed for each household in which a member intends to make a claim. Each person present in the household at the time of the explosion and intending to make a claim must be listed on the "Notice of Claim" form returned for that household. Each such person over the age of 18 must also sign the form in the appropriate space. FAILURE TO LIST ANY MEMBER OF A HOUSEHOLD ON THE "NOTICE OF CLAIM" FORM OR TO INCLUDE THAT PERSON'S SIGNATURE ON THE FORM WILL RESULT IN THE CLAIM OF THAT MEMBER OF THE HOUSEHOLD BEING DISALLOWED AND FOREVER BARRED, MEANING THAT THAT CLAIM CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT. This is also true of minors (persons under the age of 18), whose names must be listed on the "Notice of Claim" form in order for their claims to be considered by the Court. FAILURE TO LIST ANY MINOR ON THE "NOTICE OF CLAIM" FORM WILL RESULT IN THE CLAIM OF THAT MINOR BEING DISALLOWED AND FOREVER BARRED, MEANING THAT THAT CLAIM CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT. "Notice of Claim" forms filled out on behalf of minors must be signed by their legal representatives, but you must provide the minor's full name, date of birth, and your relationship to the minor in the space provided.

To protect your rights, the "Notice of Claim" form must be fully and completely filled out. You must respond to each aspect of the form which is applicable to your claim. FAILURE TO FILL OUT ANY PORTION OF THE FORM WILL BE TAKEN BY THE COURT AS A STATEMENT THAT YOU ARE NOT MAKING A CLAIM FOR THAT PARTICULAR ITEM OF DAMAGE. YOUR SIGNATURE ON THE "NOTICE OF CLAIM" FORM CONSTITUTES A REPRESENTATION THAT THE INFORMATION CONTAINED THEREIN IS TRUE AND CORRECT, UNDER PENALTY OF PERJURY.

If you do not understand or have any questions concerning the "Notice of Claim" process, you may contact the Plaintiffs' Legal Committee, 1–800–777–8884 or (504) 586–0000, to assist you. You may also contact any other attorney you may have selected to represent you. DO NOT CALL OR WRITE TO THE JUDGE, CLERK OF COURT, OR DEFENSE ATTORNEYS.

*The deadline for postmark of "Notice of Claim" forms is May 5, 1989.* Therefore, you should respond as soon as possible upon receipt of this notice. The forms should be addressed to:

NITA GORRELL, ESQ.
SPECIAL MASTER
SHELL NORCO EXPLOSION
LITIGATION
P.O. BOX 1537
HAMMOND, LOUISIANA, 70404
1–800–624–2445

March ——, 1989
New Orleans, Louisiana

Clerk of Court
United States District Court
Eastern District of Louisiana
New Orleans, Louisiana 70130

540

IN RE: SHELL OIL REFINERY EXPLOSION FILE NO. _____

<u>NOTICE OF CLAIM</u>

RETURN ADDRESS:

 NITA GORRELL, ESQ.
 SPECIAL MASTER
 SHELL NORCO EXPLOSION LITIGATION
 P.O. BOX 1537
 HAMMOND, LOUISIANA 70404 PLEASE PRINT
 1-800-624-2445

1. NAME OF HEAD OF HOUSEHOLD:_____
 First Middle Last

2. IS HEAD OF HOUSEHOLD CLAIMING TO HAVE SUSTAINED INJURIES OR DAMAGES AS A A RESULT OF THE EXPLOSION AT THE SHELL OIL REFINERY IN NORCO, LOUISIANA ON MAY 5, 1988? _____ Yes _____ No

3. BIRTHDATE OF HEAD OF HOUSEHOLD: _____
 SOCIAL SECURITY NUMBER OF HEAD OF HOUSEHOLD: _____

4. HOME TELEPHONE NUMBER OF HEAD OF HOUSEHOLD: _____
 WORK TELEPHONE NUMBER OF HEAD OF HOUSEHOLD: _____

5. PRESENT MAILING ADDRESS OF HEAD OF HOUSEHOLD:_____
 Street

 _____
 City or Town Apt. No.

6. RESIDENCE LOCATION (STREET ADDRESS) AT THE TIME OF EXPLOSION AT SHELL NORCO REFINERY ON MAY 5, 1988 (if not the same as No. 4 above):

 _____

7. NAME AND ADDRESS OF HEAD OF HOUSEHOLD'S EMPLOYER ON MAY 5, 1988:

 NAME: _____

 ADDRESS: _____

 CITY: _____

8. LIST THE NAMES, BIRTHDATES AND SOCIAL SECURITY NUMBERS OF EVERYONE IN YOUR HOUSEHOLD AT THE TIME OF THE EXPLOSION WHO CLAIMS TO HAVE SUSTAINED INJURIES OR DAMAGE AS A RESULT OF THE EXPLOSION:

| NAME | BIRTHDATE | SOCIAL SECURITY NUMBER | RELATION TO HEAD OF HOUSEHOLD LISTED IN QUESTION # 1 |
|------|-----------|------------------------|------------------------------------------------------|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CLAIMS BEING MADE BY YOU OR MEMBERS OF YOUR HOUSEHOLD AS A DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988:

YES NO

9. DID YOU OR ANY MEMBER OF YOUR HOUSEHOLD EVACUATE YOUR HOME AFTER THE EXPLOSION AS THE DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988?

10. DID YOU OR ANY MEMBER OF YOUR HOUSEHOLD SEE A DOCTOR AS A DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988?

11. WERE YOU OR ANY MEMBER OF YOUR HOUSEHOLD HOSPITAL-IZED AS A RESULT OF THE EXPLOSION OF MAY 5, 1988?

12. DID YOU OR ANY MEMBER OF YOUR HOUSEHOLD LOSE ANY TIME FROM WORK AS A DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988?

13. WAS ANY PROPERTY OWNED BY YOU OR MEMBERS OF YOUR HOUSEHOLD DAMAGED AS A RESULT OF THE EXPLOSION OF MAY 5, 1988?

14. HAVE YOU OR ANY MEMBER OF YOUR HOUSEHOLD RECEIVED ANY MONEY FOR THE DAMAGES OR LOSSES BEING CLAIMED?

15. IF YOUR ANSWER TO QUESTION 14 WAS YES, PLEASE DESCRIBE, IDENTIFYING THE DATE, AMOUNT, PARTY PAYING THE MONEY, PARTY RECEIVING THE MONEY, AND THE REASON FOR PAYMENT. _____

_____

Yes No

16. HAVE YOU OR ANY MEMBER OF YOUR HOUSEHOLD SIGNED A RELEASE IN CONNECTION WITH THE EXPLOSION OF MAY 5, 1988?

17. IF YOUR ANSWER TO QUESTION 16 WAS YES, PLEASE DESCRIBE, IDENTIFYING THE PERSON WHO SIGNED THE RE-LEASE AND THE APPROXIMATE DATE THE RELEASE WAS SIGNED. _____

_____

_____

18. ARE YOU OR ANY MEMBER OF YOUR HOUSEHOLD NOW OR HAVE _____ _____
 ANY OF YOU EVER BEEN REPRESENTED BY AN ATTORNEY AT
 ANY POINT SINCE MAY 5, 1988 RELATIVE TO THIS EXPLOSION?

19. IF SO, LIST:
 ATTORNEY'S NAME: _____
 TELEPHONE: _____
 MAILING ADDRESS: _____

20. HAVE YOU OR ANY MEMBER OF YOUR HOUSEHOLD SIGNED A _____ _____
 CONTRACT WITH THE ATTORNEY LISTED IN QUESTION 19?

21. IF SO, APPROXIMATELY WHEN? _____

_____

If you intend to pursue a claim in this class action, you *must* complete this "Notice of Claim" form and mail it to the following address:

NITA GORRELL
Special Master
P.O. Box 1537
Hammond, Louisiana 70404
1–800–624–2445

THE FORM MUST BE POSTMARKED NO LATER THAN MAY 5, 1989. FAILURE TO TIMELY FILE AND SIGN A PROPERLY FILLED OUT "NOTICE OF CLAIM" FORM WILL RESULT IN YOUR CLAIM BEING DISALLOWED BY THE COURT. IF YOU HAVE NOT PREVIOUSLY FILED AN "ELECTION TO BE EXCLUDED FROM CLASS ACTION" FORM, THIS CLASS ACTION REPRESENTS YOUR ONLY OPPORTUNITY TO MAKE A CLAIM, AND FAILURE TO TIMELY FILE THE "NOTICE OF CLAIM" FORM WILL RESULT IN FORFEITURE OF YOUR RIGHTS AND DISMISSAL OF YOUR CLAIM BY THE COURT. THIS MEANS THAT IF YOU DO NOT RETURN A PROPERLY FILLED OUT AND SIGNED "NOTICE OF CLAIM" FORM, POSTMARKED NO LATER THAN MAY 5, 1989, YOUR CLAIM WILL BE FOREVER BARRED AND CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT.

IF YOU NEED ASSISTANCE OR HAVE ANY QUESTIONS, YOU MAY CALL THE PLAINTIFFS' LEGAL COMMITTEE AT 1–800–777–8884 or (504) 586–0000. YOU MAY ALSO CALL ANY ATTORNEY YOU MAY HAVE RETAINED. DO NOT CALL OR WRITE THE JUDGE, CLERK OF COURT, OR DEFENSE ATTORNEYS.

ADDITIONAL NOTICE OF CLAIM FORMS ARE AVAILABLE AT THE OFFICE OF THE CLERK OF COURT IN THE PARISHES OF ST. CHARLES (HAHNVILLE AND EAST BANK ANNEX), ST. JOHN THE BAPTIST, ST. JAMES, ORLEANS, JEFFERSON (GRETNA AND 1st PARISH COURT, 924 DAVID DRIVE, METAIRIE, LOUISIANA 70003), AND THE OFFICE OF THE CLERK OF COURT, UNITED STATES DISTRICT COURT, 500 CAMP STREET, NEW ORLEANS, LOUISIANA 70130.

FAILURE TO LIST ANY MEMBER OF A HOUSEHOLD ON THE "NOTICE OF CLAIM" FORM OR TO INCLUDE THAT PERSON'S SIGNATURE ON THE FORM WILL RESULT IN THE CLAIM OF THAT MEMBER OF THE HOUSEHOLD BEING DISALLOWED AND FOREVER BARRED, MEANING THAT THAT CLAIM CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT.

Your signature on the "Notice of Claim" form constitutes a representation that the information contained therein is true and correct, *under penalty of perjury*. FAILURE TO FILL OUT ANY PORTION OF THE FORM WILL BE TAKEN BY THE COURT AS A STATEMENT THAT YOU ARE NOT MAKING A CLAIM FOR THAT PARTICULAR ITEM OF DAMAGE.

_____ _____
DATE SIGNATURE OF HEAD OF HOUSEHOLD